456 A.2d 136

**LINCOLN BANK, formerly Lincoln National Bank, Appellee,**

**v.**

**C & H AGENCY, INC., Appellant.**

**and**

**LINCOLN BANK, formerly Lincoln National Bank, Appellee,**

**v.**

**Clare CORKERY and John Corkery, Terre-Tenant, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1982.

Decided Dec. 31, 1982.

James W. Pearson, Jr., Philadelphia, for appellants.

Jerome L. Markovitz, Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In February of 1966 John Corkery obtained a loan in the amount of $22,000 (Loan A) from Lincoln National Bank (hereinafter "the bank"). On the day of the loan, the bank obtained three promissory notes executed as follows:

(1) a note in the amount of $22,000 payable in twenty-two monthly installments signed "C and H Agency, Inc., John J. Corkery Pres." and also signed "John J. Corkery." Corkery is the president of a real estate firm by the name of C and H Agency, Inc.

(2) A one-day judgment note in the amount of $22,000 signed "C and H Agency, Inc., John J. Corkery, Pres."

(3) A one-day judgment note in the amount of $22,000 signed "Clare Corkery." Clare Corkery is John Corkery's mother and the owner of real estate which was attached pursuant to a Writ of Execution on this note.

The text of these one-day judgment notes is as follows:

In March of 1966 the bank issued an additional loan to John Corkery in the amount of $100,000 (Loan B). This loan was co-signed by one Roy Riker. Corkery alleges that this loan, which was made to Riker after Corkery introduced Riker to the bank as a potential customer, was a business transaction which benefited both the bank and Riker, and that he, Corkery, never received any of the proceeds, although the evidence indicates that he is the maker of the note for this loan.

A third loan (Loan C) was made to Corkery and his wife in January, 1968 in the amount of $25,000. The evidence indicates that this loan was used in part to satisfy the balance outstanding on Loan A, and on January 11, 1968 the bank marked "cancelled" the installment note in the amount of $22,000. The bank did not cancel the one day judgment

notes which had been executed at the same time as the installment note, however, and retained these one day judgment notes on the theory that they could be used as collateral to secure any other loans which had been or might in the future be made by Corkery. The remainder of Loan C not used to satisfy the balance owing on Loan A was taken in cash. However, Loan C was paid off in October of 1970. After October, 1970, then, remaining unpaid, in part, was Loan B, made by Corkery and co-signed by Riker, in the face amount of $100,000. Loan A and Loan C were satisfied.

For a period of time after March of 1966, the date of Loan B, installments on the Corkery-Riker loan were paid by Riker, at least until the Riker Delaware Corporation filed for bankruptcy in 1967. At that time the bank filed with the bankruptcy court a proof of claim based on Riker's obligation on the note and his pledge of over 30,000 shares of Riker Delaware Corporation stock to secure the $100,000 loan. From March of 1966 until February 1967, Riker paid the bank $38,000 on the loan. From February 1967 until July 1978, Corkery paid in excess of $16,000 on the loan. The bank's witness at deposition summarized the state of the Corkery-Riker loan as follows: [1]

| | |
|---|---|
| Original Loan dated 3/21/66 | $91,000 |
| Payments 3/66 to 2/67 (Riker) | (38,000) |
| Payments 2/67 to current (Corkery) | (16,117) |
| Payments 2/67 to current (Riker) | ( 1,322) |
| Current Principal Balance | $35,560 |
| Interest paid to Feb 71 (Riker) | $ 8,638 |
| Interest written off to Jan 72 | $13,454 |

Bank Exhibit I. The evidence also indicated that since 1972 Corkery paid an additional $15,739 in interest and that the balance due on the Corkery-Riker loan at the time of the petition to open judgment was $35,335.

1. The evidence indicates that immediately after the $100,000 loan was made, $9,000 was reapplied to reduce the principal balance to $91,000.

On October 31, 1966, roughly eight months after Loan A had been made, the bank caused judgment to be entered by confession against Clare Corkery and against C and H Agency, Inc. on the two judgment notes, each in the amount of $22,000. Between 1966 and 1976, a ten year period, various writs of revival of judgment were filed and were unopposed, and the amount of judgment was reassessed at $35,335. On April 1, 1976 a Writ of Execution was issued and served, and pursuant to that writ, the sheriff attached real estate owned by Clare Corkery. Execution was stayed and Corkery made various payments to the bank on the balance of Loan B until August, 1978, when Corkery, Clare Corkery, and C and H Agency filed petitions to open judgment. The bank answered and depositions were conducted. The trial court granted the petitions to open confessed judgment, but on appeal the Superior Court in a memorandum opinion vacated the trial court's orders. *Lincoln Bank v. Clare Corkery and John Corkery*, 289 Pa.Super 568, 429 A.2d 66 (1980).

Two primary issues arise on this appeal. The first is whether the bank may utilize the one day judgment notes which were executed in connection with Loan A to secure advances made in connection with Loan B. The second is whether, even if the bank may not utilize these notes to secure Loan B, petitioner may oppose the bank's confession of judgment on these notes when petitioner has not acted in a timely manner, waiting approximately twelve years after the notes were confessed to petition to open judgment.

The instruments reproduced above are divided into two distinct segments, the first segment, actually the note, specifies the amount of the note (twenty-two thousand dollars plus interest), when it is due, and to whom it is to be paid; the second segment, the enforcement provision, specifies the warrant of attorney. The pertinent language of the warrant of attorney segment is: .

[T]he undersigned ... authorizes ... any Attorney of any Court of Record ... to appear and confess Judgment

against them . . . for the above sum, as of any term past, present, or future. . . .

The bank's contention is that the language in the notes authorizing confession of judgment "for the above sum, as of any term past, present, or future" authorizes a confession in the amount of $22,000, the face amount of the note, plus interest and collection fees, for any outstanding debt, incurred by John Corkery, whether that debt is incurred in the *past,* the *present* or the *future.* In the case of the one day judgment note signed by Clare Corkery, the bank argues that such a note also secures any past, present or future indebtedness incurred by John Corkery. This contention is not based on the assertion that there was an agreement to extend these notes to loans other than Loan A, but merely that the notes themselves contain language which provides for this result. There is no evidence of record that there was a separate agreement between the bank and the Corkerys to extend the coverage of the one day notes to other loans beyond Loan A.

▉ As this Court stated in *Kline v. Marianne Germantown Corp.,* 438 Pa. 41, 263 A.2d 362 (1970): "A warrant to confess judgment must be explicit and will be strictly construed, with any ambiguities resolved against the party in whose favor the warrant is given." Even if one were to construe the language of these one day judgment notes according to a less stringent standard, however, the bank's position could not prevail. The language in question merely authorizes judgment to be confessed as to whatever amount is due *on the loan underlying that particular note* at any particular time, past (if an amount were due before the note was signed), present (an amount computed as of the time of signing), or future (an amount computed as of a future time). Thus, a plain reading of the language of the notes requires the conclusion that the note concerns amounts due at various time periods with respect to the signing of the note for the underlying debt. The imposition of liability for loans beyond the loan underlying this note would require

specific and unequivocal language, and in its absence, liability for future advances will not be imposed.

■ Furthermore, even if the language of the note were not plainly inapplicable to loans other than the loan for which the note was executed (Loan A), at a minimum the language of the note is ambiguous, and such ambiguity is to be resolved against the bank. *Kline v. Marianne Germantown Corp., supra.* We conclude, therefore, that the one-day judgment notes in this case do not secure future advances and that when Corkery paid the outstanding balance of Loan A by applying part of the proceeds of Loan C to the balance due on Loan A, Loan A was satisfied and the notes signed pursuant to the granting of Loan A became *functus officio,* of no further power or effect. The fact that these notes were confessed, that the bank retained the one-day judgment notes even after the underlying debt had been satisfied, and that judgment on the one-day notes was periodically revived, therefore, is of no legal significance, for the judgment was extinguished by operation of law when the underlying obligation was paid, and was therefore a nullity. A nullity revived remains a nullity.

■ Nevertheless, the bank contends that Corkery may not assert any defense against the confession of judgment on the one day judgment notes because the petition to open judgment was not timely filed and is barred by laches. Although the nature of a proceeding to open a confessed judgment has been altered by the imposition in 1973 of Pa.R.C.P. 2959, the proceeding, as the parties note, retains an equitable aspect and the timeliness with which a defendant must file a petition to open a confessed judgment is within the discretion of the court.[2] The crucial factor in

---

2.  While it is true that since 1973 Rule 2959(e) Pa.R.C.P. has governed the appropriate standard which a court must use to determine whether evidence of a meritorious defense is presented by an application to open judgment, it cannot be said that equity no longer controls the issue of timeliness of the application. As the comment to the rule explains, the opening of a confessed judgment prior to 1973 required the petitioner to persuade the court that its case was meritorious and that the court should exercise its equitable discretion

determining whether the petition is timely is not the specific time which has elapsed, but the reasonableness of the explanation given for the delay. *Jamestown Banking Co. v. Conneaut Lake Dock & Dredge Co.,* 339 Pa. 26, 14 A.2d 325 (1940). There is no time limit on the exercise of the power of a court to open a judgment by confession, *Windber Trust Co. v. Evans,* 192 Pa.Super. 417, 421, 161 A.2d 664, 666 (1960), and the chancellor's determination as to reasonableness, absent clear and manifest abuse of discretion, will not be disturbed. *Equibank, N.A. v. Dobkin,* 284 Pa.Super 143, 425 A.2d 461 (1981).

◼ On the record before us, Corkery made allegations of fraud, overreaching and detrimental reliance in explanation of the delay. Although these allegations were denied by the bank and were not established as evidence by deposition, the circumstances of the transaction itself are sufficient to corroborate at least some of the allegations and to serve as a basis for the chancellor's findings that there was a reasonable explanation for the delay. Furthermore, as the Superior Court has stated in *Heinly v. Keck,* 192 Pa.Super. 537, 540, 161 A.2d 655, 657 (1960): "The criterion of laches is prejudice, and laches will not be imputed to a plaintiff where no injury results to the defendant by reason of the delay. *Hostetter v. Sterner's Grocery, Inc.,* 390 Pa. 170, 134 A.2d 884 [1957]." Since the underlying debt on which the judgments were confessed was satisfied, the judgments were, as discussed earlier, nullities. Corkery's failing to petition to open the null judgments, therefore, could hardly have prejudiced the bank, for the bank had no legally cognizable claim

to open judgment, a heavier burden than under the present rule, which requires in pertinent part:

> If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court *shall* open the judgment.

Pa.R.C.P. 2959(e) (Emphasis supplied). Thus, on the issue of whether a meritorious defense has been presented which would justify the opening of judgment, this Court has stated that "equitable considerations are generally no longer relevant." *Kardos v. Morris,* 470 Pa. 337, 341, 368 A.2d 657, 660 (1977). Equitable considerations continue to be relevant, however, on the issue of timeliness or laches.

on which it could be prejudiced, and in the absence of prejudice, laches may not act as a bar to the claim.

Reversed.

McDERMOTT, J., did not participate in the decision of this case.