**Marion and Steele McKEEMAN and Rose Chendorain, Appellants,**

v.

**CORESTATES BANK, N.A. and Security Abstract of Pa, Inc., Appellee.**

Superior Court of Pennsylvania.

Submitted July 26, 1999.

Filed April 19, 2000.

---

[4]. In determining whether a given crime violates the public trust, the courts must consider the nature of the crime and the passage of time since the crime was committed. Felonies violate the public trust by their very nature and are thus always infamous crimes. Under some circumstances, certain misdemeanor convictions may not undermine the public trust and, therefore, would not constitute infamous crimes. This is not such an instance, however.

Jeffry S. Pearson, Norristown, for appellants.

Daniel T. Fitch, Philadelphia, for Corestates Bank, appellee.

Steven H. Lupin, Lansdale, for Security Abstract, appellee.

Before DEL SOLE, STEVENS and BROSKY, JJ.

STEVENS, J.:

¶ 1 Appellants, Marion and Steele McKeeman and Rose Chendorian, appeal from an order of the Court of Common Pleas of Philadelphia County, which granted Appellee Security Abstract of PA, Inc.'s preliminary objections. We affirm, in part, and reverse, in part.

¶ 2 The record reflects that the McKeemans and Chendorian filed a complaint (hereinafter "the Complaint") against Corestates Bank (hereinafter "Corestates") and Security Abstract (hereinafter "Security") on January 27, 1998, stemming from transactions surrounding the sale and settlement of the McKeeman's property. The Complaint alleges that in September, 1996, the McKeeman's were in the process of selling their residence. Complaint at 2. Settlement of the property was conducted by Security, acting as title and/or settlement clerks for the buyers. *Id.* "In preparation for the settlement, plaintiffs provided Security with information regarding two loan accounts held by them with defendant Corestates," one of which was secured by a mortgage against the residence, and the other of which was unsecured.[1] *Id.* The Complaint further alleges that "[i]n order for plaintiffs to pass clear title to the property, it was necessary for them to insure that the secured loan account was retired at the time of settlement," and that "Security undertook and accepted responsibility for insuring that the secured loan was retired at settlement." *Id.* To this end, "plaintiffs supplied defendant Se-

curity with the account number for the secured loan," and prior to settlement Security obtained a payoff figure from Corestates. *Id.* The payoff figure obtained, however, was for the unsecured loan, not the secured loan. *Id.* "At settlement, plaintiffs repeatedly advised defendant Security that the amount being paid to Corestates in satisfaction of the secured loan seemed incorrect; however, defendant Security repeatedly assured plaintiffs that the correct loan was being paid off and that they should not worry." *Id.* Because the incorrect loan was, in fact, paid off, the mortgage remained outstanding on the property, and while "plaintiffs repeatedly asked defendants to rectify their mistake ... defendants refused to assist plaintiffs in any manner." *Id.* at 2–3. Through counsel, plaintiffs contacted both defendants and advised them of plaintiffs' willingness to have the payoff transferred to the correct loan, but defendants initially ignored counsel's correspondence, then requested that "plaintiffs incur additional fees in having their counsel prepare documents to rectify defendants' error." *Id.* at 3. "Plaintiffs, in turn, requested that defendants correct their error without requiring to [sic] plaintiffs to incur additional counsel fees," but instead, the Complaint alleges, Corestates wrongfully seized $4,700.00 from the account of Chendorian, "who was in no way involved with any of the foregoing transactions," claiming that it was entitled to the funds in satisfaction of payments owing on the secured loan. *Id.* As a consequence of Corestates seizing and refusing to return her life savings, the Complaint alleges, Chendorian suffered chest pains and hysteria requiring treatment by her physician and the prescription of medication. *Id.*

¶ 3 As a result of these circumstances, the Complaint alleges that Corestates and

---

1. The Complaint only indicates that the loan accounts were held by "plaintiffs," and does not differentiate between the McKeemans and Chendorian. We note with displeasure that there are several similar instances throughout the Complaint where the parties refer to

themselves jointly as plaintiffs, instead of specifying which person or persons is being discussed. The Complaint also contains instances where the defendants are jointly mentioned, without differentiation between Security and Corestates.

Security were guilty of (1) negligence, (2) breach of contract, (3) conspiracy, (4) conversion, and (5) intentional/negligent infliction of emotional distress. The Complaint also requests punitive damages.

¶ 4 Preliminary objections to the Complaint were filed by Security on March 20, 1998. Appellants did not file an amended complaint pursuant to Pennsylvania Rule of Civil Procedure 1028(c)(1), but they did file an answer to the preliminary objections on April 27, 1998. Subsequently, the trial court granted Security's preliminary objections by order dated June 12, 1998, and filed June 15, 1998.

¶ 5 Thereafter, the McKeemans and Chendorian settled the case with Corestates, but on November 30, 1998, Appellants filed the instant appeal of the grant of Security's preliminary objections. The trial court responded by ordering Appellants to file a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and Appellants did so on December 28, 1998, averring that it was error for the trial court to grant Security's preliminary objections. The trial court then filed its opinion pursuant to Rule 1925(a) on February 4, 1999.

¶ 6 On appeal, Appellants raise two issues for our review: (1) "Whether the trial court abused its discretion in refusing to grant plaintiffs leave to amend the complaint;" and (2) "Whether the trial court erred in granting the demurrer of appellee Security Abstract to plaintiffs' complaint." Appellants' brief at 3.

■ ¶ 7 Prior to addressing the merits of these issues, we note that Appellants' 1925(b) statement does not include an allegation that the trial court erred in refusing to grant Appellants leave to amend their Complaint, and, subsequently, this issue was not addressed by the trial court in its

1925(a) opinion. An appellant's failure to include an issue in his 1925(b) statement waives that issue for purposes of appellate review. *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998).[2] Since Appellants have failed to raise the amendment issue in their 1925(b) statement, we find that issue waived.

■ ¶ 8 Turning to Appellants' assertion that the trial court erred in granting Security's demurrer to their Complaint, we address such a claim under the following standard:

> All material facts set forth in the Complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Emerich v. Philadelphia Center for Human Development*, 554 Pa. 209, 213, 720 A.2d 1032, 1034 (1998) (citation omitted). "For purposes of our review of the complaint, only well pleaded material facts are admitted, and not conclusions of law." *Stempler v. Frankford Trust Co.*, 365 Pa.Super. 305, 529 A.2d 521, 523 (1987) (citation omitted).

¶ 9 With this standard in mind, we address Appellants' remaining claims. Appellants first assert that it was error for the trial court to grant the demurer to the negligence portion of the Complaint. Appellants assert that Security undertook to insure that the secured loan was paid off at the time of settlement, and, having undertaken such a duty, they allege that Security was under a legal obligation to perform the service in a non-negligent manner. Appellants' brief at 10. Appellants argue that the allegations contained

---

**2.** We note that although *Lord* is a criminal case, it concerns the application of Pennsylvania Rule of Appellate Procedure 1925. Since the Rules of Appellate Procedure apply to criminal and civil cases alike, the principles enunciated by *Lord* are equally applicable in civil cases.

in the Complaint establish that Security failed to perform its task in a careful and proper manner, causing Appellants to sustain injury and damages. *Id.* We agree and find that the trial court should not have granted Security's preliminary objections as to the negligence claim in Appellants' complaint.

¶ 10 In *Hicks v. Saboe*, 521 Pa. 380, 384, 555 A.2d 1241, 1243 (1989), the Supreme Court held that "[i]n general, the duty of a title insurance company runs only to its insured, not to third parties who are not party to the contract. The purpose of insurance is to protect the insured, the buyer, from loss arising from defects in the title which he acquires." (citation omitted). However, the Supreme Court also noted that an intended third party beneficiary may have a limited cause of action under such a contract. *Id.*

■ ¶ 11 In the case *sub judice*, we conclude that, although Appellants were not a party to the contract between Security and the buyers of the McKeeman residence, Security owed a duty to Appellants. While Security was not Appellants' title agent, it undertook to satisfy the secured loan and Appellants relied on Security to perform. It was to Security's benefit to confirm that the recorded liens against the property were discharged, and it did so by controlling the settlement distribution. As such, we conclude that the trial court erred in granting Security's preliminary objections as to the negligence claim.

■ ¶ 12 We turn now to the conversion claim,[3] in which Appellants allege that "Security and Corestates, acting in concert with one another, wrongfully appropriated unto themselves the property of plaintiff Rose Chendorian, by improperly and illegally seizing plaintiff Chendorian's property on deposit with defendant Corestates."[4] Complaint at 8. The facts set forth by Appellants' Complaint, however, only allege that Corestates, not Security, seized the account as follows:

On or about December 8, 1997, defendant Corestates wrongfully seized $4,700.00 from the account of plaintiff Rose Chendorian, who was in no way involved with any of the foregoing transactions.

Defendant Corestates claimed it was entitled to seize these fund in satisfaction of payments claimed to be owing on the secured loan which defendants had failed to have satisfied as settlement on the Egypt Road property.

. . .

As a consequence of the action of defendant Corestates, plaintiff Rose Chendorian was caused to sustain chest pains and hysteria requiring treatment by her physician and medication with prescription drugs.

Despite demand, defendant Corestates refuses to return these wrongfully seized funds to plaintiff Rose Chendorian's account.

Complaint at 3. The lack of conversion allegations against Security, the title insurance company, is not surprising, as only

---

3. Conversion is defined under Pennsylvania law as:

"the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451, 197 A.2d 721, 726 (1964); *Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 524 A.2d 896 (1987), *alloc. denied*, 516 Pa. 625, 532 A.2d 436 (1987). Although the exercise of control over the chattel must be intentional, the tort of conversion does not rest on proof of

specific intent to commit a wrong. *Norriton East Realty Corp. v. Central–Penn National Bank*, 435 Pa. 57, 254 A.2d 637 (1969).
*Underhill Coal Mining Co. v. Hixon*, 438 Pa.Super. 219, 652 A.2d 343, 345 (1994). "Money may be the subject of conversion." *Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112, 114 (1987) (*citing Pearl Assurance Co. v. National Ins. Agency*, 151 Pa.Super. 146, 30 A.2d 333, 337 (1943)).

4. The Complaint only alleges conversion with regard to Chendorian, not the McKeemans.

Corestates, the bank where the account was held, had access to the account and the subsequent ability to "deprive" Chendorian of her rights to it, as is required to show conversion. Because the Complaint does not aver facts showing conversion on the part of Security, the preliminary objection was properly granted.

¶ 13 We turn now to the conspiracy claim, which hinges on the validity of the conversion claim. Since we have concluded that preliminary objection was properly granted with regard to the conversion claim, we must also conclude that preliminary objection was properly granted as to the conspiracy claim.

∎ ¶ 14 In order to state a civil action for conspiracy, a complaint must allege (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa.Super.1998). Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen*, 370 Pa.Super. 422, 536 A.2d 1337, 1342 (1987) (citation omitted).

¶ 15 The conspiracy portion of the Complaint avers that Security and Corestates conspired to commit an unlawful act as follows:

At all times material hereto, defendants agreed by and between themselves to refuse to satisfy plaintiffs secured loan account with defendant Corestates in an effort to extort monies from plaintiffs and with the intention of causing intentional and malicious injury to plaintiffs in their financial and business affairs.

In furtherance of this conspiratorial agreement, defendants committed the tortious act described above.

The actions of defendants constituted an attempt to illegally and improperly appropriate from plaintiffs, monies to which they were not entitled.

Complaint at 7.

∎ ¶ 16 Clearly, in their complaint, Appellants allege that Corestates and Security conspired to commit conversion of their money. Because we have concluded that preliminary objection was properly granted with regard to the conversion claim, there can be no cause of action for civil conspiracy here based on that claim.

∎ ¶ 17 Turning to Appellants' allegation that Security is guilty of intentional/negligent infliction of emotional distress, the Complaint asserts that:

The aforesaid conduct of defendants was undertaken in concert and with the specific intent to cause physical pain and emotional suffering to plaintiffs[5] by wrongfully and improperly seizing the life savings of eighty-year old plaintiff Rose Chendorian

As a consequence of the intentional and malicious conduct of defendants, plaintiffs sustained physical pain and emotional distress, manifesting in chest pains, nausea, stomach pains, tremulousness, headaches, and which symptoms required medical treatment and prescription medication.

Complaint at 8. As this claim follows the Complaint's allegations of negligence, conspiracy, and conversion, we assume Appellants are referring to those allegations when they reference the defendants' "aforesaid conduct." As we have stated previously, preliminary objection was properly granted with regard to the conversion and conspiracy claims. As such, we cannot conclude that it was error for the trial court to grant preliminary objec-

5. Although this portion of the Complaint alleges that "plaintiffs" sustained physical pain and emotional distress, the remainder of the Complaint makes it clear that the allegations of physical pain and emotional distress apply to Chendorian, not the McKeemans.

tion to the intentional/negligent infliction claim on this basis. Moreover, we note that:

"It is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery." In defining the outrageous conduct requirement, this Court has stated:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

. . .

[B]ecause we find Appellant has not alleged outrageous conduct by Appellee or the University, we need not discuss whether the tort of intentional infliction of emotional distress is actually recognized in Pennsylvania.

*Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa.Super.1997) (citations omitted). Similarly, we will not disturb the trial court's conclusion that Appellants have not alleged outrageous conduct by Security which would constitute intentional/negligent infliction of emotional distress.

¶ 18 Appellants lastly assert that they are entitled to punitive damages. Specifically, Appellants assert that Corestates and Security displayed reckless conduct which would warrant the imposition of punitive damages. In light of our conclusion that preliminary objection was properly granted with regard to the conversion, conspiracy, and intentional/negligent infliction of emotional distress claims, it is clear that punitive damages are not warranted with regard thereto. As to the negligence claim, we conclude that it does not warrant punitive damages as it does not include "outrageous and egregious conduct done in a reckless disregard of [Appellants'] rights." *Johnson v. Hyundai Motor America*, 698 A.2d 631, 639 (Pa.Super.1997) ("[A] court may award punitive damages only if an actor's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.") (citations omitted).

¶ 19 For the foregoing reasons, we affirm the grant of preliminary objections to Appellants' complaint, in part, and reverse as to the negligence claim.

¶ 20 Affirmed, in part; Reversed, in part; Remanded for proceedings consistent with this decision; Jurisdiction relinquished.

¶ 21 Concurring Opinion by BROSKY, J.

BROSKY, J., concurring.

¶ 1 I join in the majority's disposition of the arguments relating to the trial court's grant of a demurrer in favor of Security Abstract.

¶ 2 However, I write separately to also address the majority's disposition of Appellants' first issue: whether the trial court abused its discretion in refusing to grant Appellants leave to amend the complaint. The majority has concluded that the principles set forth by our Supreme Court in *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), a criminal case, "are equally applicable in civil cases." Memorandum at 4–5. Therefore, the majority concludes, this issue has been waived by Appellants' failure to include it in their 1925(b) statement.

¶ 3 *Lord*, however, specifically addressed the issue of "whether Pa.R.Crim.P. 1410 precludes an appellate court from deeming an issue waived when an Appellant fails to raise that issue in his Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b)." 719 A.2d at 307. The issue thus presented to our Supreme Court involved construction and interpretation of *both* Pa.R.Crim.P. 1410 and Pa.

R.A.P. 1925(b) to determine whether questions raised following a criminal conviction had been preserved for appellate review.

¶ 4 My concern is with an unwavering, blanket application of *Lord* to all cases on appeal. I do not read the decision in *Lord* to automatically preclude consideration of all issues in every civil and criminal case, where an appellant has failed to include a specific question in his 1925(b) statement. Absent such an interpretation by our Supreme Court or this Court *en banc*, I would decline to so hold. *See Commonwealth v. Steadley*, 748 A.2d 707, 2000 PA Super 62 (2000) (Popovich, J., concurring and dissenting) (questioning such blanket application of the language in *Lord*, and concluding that Superior Court has discretion to consider an issue raised by an appellant as provided by Pa.R.A.P. 1925).

¶ 5 Moreover, I would decline to so extend *Lord* to the situation presented in the instant appeal. I would, instead, focus on the longstanding analysis of whether effective appellate review has been foreclosed. *See, e.g., Taylor v. Owens-Corning Fiberglas Corp.*, 446 Pa.Super. 174, 666 A.2d 681 (1995), *appeal denied*, 544 Pa. 661, 676 A.2d 1201 (1996)(failure to raise a particular issue in concise statement of matters complained of on appeal *may* result in waiver of that issue, where that failure hinders effective appellate review); Pa. R.A.P. 1925 (same). *Cf. Giles v. Douglass*, 747 A.2d 1236, 2000 PA Super 55 (2000) (ruling that failure of appellant to file 1925(b) statement waived all issues for appellate review).

¶ 6 A determination of whether amendment to pleadings should be permitted rests within the sound discretion of the trial court. *Borough of Mifflinburg v. Heim*, 705 A.2d 456 (Pa.Super.1997). As Appellants failed to raise this issue in their 1925(b) statement, the trial court did not address amendment of Appellants' complaint. Without the benefit of the trial court's reasons for failing to permit such amendment, effective appellate review of its exercise of discretion has been foreclos-

ed. I would, under this analysis, conclude that Appellant's argument has therefore been waived pursuant to *Taylor, supra*. Accordingly, I concur only in the result of the majority's disposition of the issue of amendment of the complaint.