**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 11-1936

———

KIMBERLY A. BARTOS,
Appellant

v.

MHM CORRECTIONAL SERVICES, INC., ARDIE KISSINGER AND CHARLES
WHITNEY

———

Appeal from the United States District Court for the Middle District of Pennsylvania
(D.C. Action No. 3:09-cv-1018)
District Judge: Honorable A. Richard Caputo

———

Submitted under Third Circuit LAR 34.1(a)
November 18, 2011

———

Before: FUENTES and CHAGARES, <u>Circuit Judges</u>
and POGUE,[*] <u>Judge</u>

(Opinion Filed: December 7, 2011)

———

OPINION

———

———

[*] Hon. Donald C. Pogue, Chief Judge, United States Court of International Trade, sitting
by designation.

POGUE, Judge,

Appellant Kimberly Bartos appeals an order of summary judgment and an order to dismiss in part entered by the United States District Court for the Middle District of Pennsylvania. For the following reasons, we will affirm the District Court's decisions.

## I. BACKGROUND

Bartos alleges that the Appellees discriminated against her on the basis of her gender during the time that she was a mental health worker at the State Correctional Institution in Frackville, Pennsylvania ("SCI Frackville"). Bartos also alleges hostile work environment, retaliation, and conspiracy claims related to the alleged discrimination. Because we write principally for the parties, who are familiar with the background of the case, we will recite only those facts relevant to our analysis.

Bartos was employed by Appellee MHM Correctional Services ("MHM") as a mental health worker at SCI Frackville from September 1, 2003 until her termination on October 24, 2007. She worked under Program Director David Mont until his resignation in March of 2006, at which time Mont was replaced as Program Director by Appellee Ardie Kissinger. Prior to Mont's resignation, Appellee Charles Whitney became MHM's Senior Human Resources Partner for the Northern Region, which included MHM's operations at SCI Frackville.

On July 14, 2006, Bartos gave a deposition in a gender discrimination case filed by former MHM employee, Wanda Bates, against MHM, David Mont, and the Department of Corrections. Six months later, on January 16, 2007, Bartos received verbal and written

warnings after Ardie Kissinger allegedly witnessed her speaking to inmates in a degrading way, cursing at inmates, and withholding food through a practice known as the "purple diet." The following month, February 12, 2007, Bartos was again disciplined for a negative attitude and use of inappropriate language around inmates, this time on the report of a Corrections Officer. On May 29, 2007, Bartos gave a deposition in a second gender discrimination suit, filed by former MHM employee, Mary Kay Prezlomski, against MHM. Over two months after the second deposition, on August 17, 2007, Bartos received a written warning for failure to work her posted shift. Also in August of 2007, Bartos received a sub-standard performance evaluation and was given a performance improvement plan. Bartos was suspended from employment on October 17, 2007 after an inmate was improperly placed on suicide precautions and moved to a more restrictive confinement area during her shift the previous night. Following an investigation, Bartos was terminated on October 24, 2007 on the grounds that she assisted in moving an inmate without proper authority and participated in forging a doctor's signature.

Bartos filed charges related to her termination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). Upon receiving a "right to sue" letter from the EEOC, Bartos initiated this suit on May 29, 2009 in the Middle District of Pennsylvania, claiming gender discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (2006), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. §§ 951–63 (West

3

2009).  Bartos also alleged state law claims for conspiracy and intentional infliction of emotional distress.

On July 6, 2010, the District Court issued an Order dismissing Bartos's state law claims for failure to state a claim.  In a second Order, dated March 18, 2011, the District Court granted summary judgment against Bartos on the remaining claims.  On April 11, 2011, Bartos filed this appeal challenging the District Court's March 18, 2011 Order granting summary judgment and the July 6, 2010 Order dismissing her conspiracy claim.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction over Bartos's federal claims pursuant to 28 U.S.C. § 1331 (2006), and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(a) (2006).  We have jurisdiction over this Appeal pursuant to 28 U.S.C. § 1291 (2006).

We review a "District Court's grant of summary judgment *de novo*, applying the same standard the District Court applied." Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007) (citing Doe v. County of Centre, Pa., 242 F.3d 437, 447 (3d Cir. 2001)). When reviewing a grant of summary judgment we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Stratechuk v. Bd. of Educ., 587 F.3d 597, 603 (3d Cir. 2009) (quoting Norfolk S. Ry. v. Basell USA, Inc., 512 F.3d 86, 91 (3d Cir. 2008)).  However, general averments and conclusory allegations are insufficient to rebut a motion for summary judgment. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888–89 (1990); Trap Rock Indus., Inc. v. Local 825,

4

Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) ("A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'") (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).

We also review a district court's grant of a motion to dismiss *de novo*. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Dismissal is appropriate when a plaintiff has failed to plead sufficient facts to state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2) (internal quotation marks omitted)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (citing Twombly, 550 U.S. at 556).

### III. ANALYSIS

### A. Claims under Title VII and the PHRA

The District Court properly granted summary judgment on Bartos's Title VII and PHRA claims because Bartos has not presented a *prima facie* case on any of her three alleged theories: gender discrimination, hostile work environment, or retaliation.

To establish a *prima facie* case of gender discrimination, the plaintiff must show that:

> (1) [she] belongs to a protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of

5

discriminatory action, the employer continued to seek out individuals with qualifications similar to [hers] to fill the position.

Sarullo v. USPS, 352 F.3d 789, 797 (3d Cir. 2003).

The District Court correctly found that Bartos failed to present evidence raising an inference of discriminatory action. Most of the evidence Bartos presents carries no inference of gender discrimination, as it does not suggest that discriminatory intent (rather than some other factor) motivated the adverse employment actions taken against her. Bartos's evidence that could support an inference of discrimination is insufficient because it consists of general and conclusory allegations of gender based preferential treatment and gender based antagonism. See Lujan, 497 U.S. at 888–89. For these reasons, the District Court properly granted summary judgment on the gender discrimination claim.

The District Court also properly granted summary judgment on Bartos's hostile work environment claim. This claim is founded on actions taken by David Mont both prior to MHM's contract at SCI Frackville and during his tenure as MHM's Program Director. Claims based on Mont's actions are time barred under both Title VII and the PHRA. In order to file a suit under the PHRA, a plaintiff must file a claim with the PHRC within 180 days of the alleged act. Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) ("If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA."). To file a suit under Title VII,

6

a plaintiff must file a charge with the EEOC within 300 days[1] of the complained of action or the suit is time-barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109–10 (2002).

David Mont resigned from MHM in March of 2006. A suit based on any actions taken by Mont prior to his resignation was time-barred under the PHRC as of September 2006 (at the latest) and under the EEOC as of January 2007 (at the latest). Though the dates of Bartos's administrative filings are not readily apparent from the record, the parties' briefs, or the District Court's Orders, they do not appear to have fallen within the statutory time limits. Under 29 C.F.R. § 1601.28(a)(1) (2006), the EEOC "shall promptly issue such notice [of right to sue] to all parties, at any time after the expiration of one hundred eighty (180) days from the date of the filing of the charge . . . ." Upon receipt of the right to sue notice, the plaintiff then has ninety days to bring a suit. § 1601.28(e)(1). If Bartos filed her suit on May 29, 2009, the earliest she could have filed her charge under the regulatory time limits would be September 1, 2008. Even accounting for some tardiness by the EEOC in releasing the right to sue notice, Bartos's administrative claim was over eighteen months too late to preserve any claims against Mont.

Nor does Bartos's claim against MHM for wrongful termination preserve any claims against Mont. Under the timing requirements of Title VII, "discrete acts that fall

---

[1] "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." Nat'l R.R. Passenger Corp., 536 U.S. at 109. Because Pennsylvania has the PHRC to hear discrimination claims, the later deadline is applicable.

within the statutory time period do not make timely acts that fall outside the time period." Nat'l R.R. Passenger Corp., 536 U.S. at 112; see also id. at 111 ("We have repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts."). For these reasons, the District Court properly granted summary judgment on the hostile work environment claim.

To establish a *prima facie* case for retaliation, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)). Causation can be shown through temporal proximity between the protected activity and the adverse employment action; an intervening pattern of antagonism; or the evidence taken as a whole. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280–81 (3d Cir. 2000); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997). Bartos did not present sufficient evidence to support a causal connection between her protected activity and the adverse employment action on any of these three theories. Bartos's termination occurred five months after her deposition in the Prezlomski case and fourteen months after her deposition in the Bates case; neither period of time is unduly suggestive of a causal connection. See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (holding two months between protected activity and adverse employment action not unduly suggestive).

8

Though Bartos was subject to several disciplinary actions in the period between her first deposition testimony and her termination, these actions do not amount to a pattern of antagonism as they were neither consistent and continuous during the intervening period nor does Bartos offer any basis for linking the disciplinary actions to her deposition testimony. Cf. Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993) (finding a pattern of antagonism where plaintiff was subject to a "constant barrage of written and verbal warnings . . . , inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge." (ellipses in original) (internal quotation marks omitted)). For the same reasons, even when the evidence is taken as a whole, there is no basis for drawing a causal connection between Bartos's protected activity and her termination. In short, the connection between the protected activity (Bartos's depositions) and the adverse employment action (her discipline and eventual termination) was so attenuated and remote in time that no causal connection can be inferred.[2] For these reasons, the District Court properly granted summary judgment on the retaliation claim.

---

[2] Though we do not reach the question of whether MHM's stated reasons for terminating Bartos were pretextual because we find that no *prima facie* case has been presented, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), we note that evidence merely suggesting an adverse employment decision is wrong or mistaken is insufficient to support a claim of retaliation. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").

## B. State Law Conspiracy Claim

The District Court properly dismissed the state law conspiracy claim because Bartos insufficiently pled an underlying cause of action. A civil action for conspiracy requires an agreement by the conspirators to commit an unlawful act. McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." Id. (quoting Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987).

Bartos premised her conspiracy claim on the tort of false light. False light is an invasion of privacy that occurs when "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts § 652E (1977). False light is only applicable when the plaintiff "is given publicity," id. § 652E cmt. a., meaning that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge," id. § 652D cmt. a (distinguishing publicity from publication, "which includes any communication by the defendant to a third person").

Bartos has failed to state a claim for conspiracy to place her in a false light because she has averred no facts regarding publicity. There is nothing in the record to indicate that Appellees made any information about Bartos a matter of "public knowledge." Id.

10

Without publicity there cannot be false light. Because Bartos has pled no facts that can support an inference of an underlying unlawful act for the purposes of showing a conspiracy, she has failed to plead sufficient facts to state a claim that is plausible on its face. Twombly, 550 U.S. at 570. For these reasons, the District Court's dismissal of Bartos's conspiracy claim was proper.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's Orders dismissing Bartos's claim in part and granting summary judgment.