In re Robin BLAYLOCK, Debtor.

Robin Blaylock, Plaintiff,

v.

Philadelphia Housing Authority, Carl Green, Jackie McDowell, Elridge Stubbs, Defendants.

Bankruptcy No. 03–35155DWS.
Adversary No. 03–1144.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 25, 2003.

Michael Pileggi, Philadelphia, PA, for Debtor.

Dean Waldt, Ballard Spahr Andrews & Ingersoll, LLP, Voorhees, NJ, for Defendants.

Lawrence Lichtenstein, Haddonfield, NJ, Chapter 7 Trustee.

Dave P. Adams, Office of the U.S. Trustee, Philadelphia, PA, United States Trustee.

**OPINION**

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the Motion for Determination that the Automatic Stay Does Not Apply or, in the Alternative, for Relief from the Automatic Stay (the "Motion") filed by the Philadelphia Housing Authority ("PHA") in response to the Debtor's Motion for Preliminary Injunction and Complaint against it. For the reasons that follow, the Motion is Granted, and the Complaint is Dismissed As Moot.

**BACKGROUND**

The relevant facts are not in dispute, and accordingly no testimony was presented. On September 24, 2003 the Honorable Thomas N. O'Neill, Jr., District Judge of the Eastern District of Pennsylvania entered an Order accompanied by a seven-page Memorandum (the "Memo") setting forth his findings of fact and conclusions of law in *Robin Blaylock v. Philadelphia Housing Authority*, Civil Action No. 02–CV–8251 (the "District Court Action"). In the District Court Action, Debtor sued PHA for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the U.S. Housing Act, 42 U.S.C. § 1437, for failure to process and administer her tenancy rights to public housing. Contending that PHA and its officials violated her rights by demanding that she vacate the public housing facilities at 3706 Brandywine Avenue, Philadelphia, Pennsylvania (the "Premises") where she was living, she requested the District Court to direct the defendants to grant her full grievance procedures before she could be evicted. Memo at 1.

The following findings gleaned from the Memo are pertinent to this contested matter:

1. Debtor did not acquire the Housing through the conventional PHA admissions process. Rather observing that the Premises were vacant for about two years, she moved in.

2. After PHA became aware of her occupancy, it served her with a squatter's notice on May 6, 1999 advising her that she was occupying the unit unlawfully, was subject to eviction and demanding that she vacate the Premises immediately. A second notice was sent in July 1999 to which Debtor responded by filing a grievance. An arbitrator concluded that she was not entitled to a grievance proceeding because she was not a tenant. Subsequent notices to vacate sent in 2000, 2001 and 2002 were also ignored.

3. Despite the notices, PHA did not evict Debtor out of concern for her and her grandchildren's welfare, advising her to file a PHA application if she wished to be eligible for public housing in Philadelphia. PHA did not concede that she would be allowed to remain on the Premises as a lawful tenant.

4. Rather than file the application for housing, Debtor sued PHA complaining of the process used by it in demanding that she vacate the Premises. Specifically, she contended that she was entitled to a lease termination notice and a grievance hearing pursuant to basic notions of due process reflected in applicable HUD regulations.

5. In rejecting her claims, the District Court concluded that "because she is not a legitimate tenant, she has no protected property interest in the residence which would entitle her to full grievance procedures." Memo at 7.

After the adjudication of her rights in the District Court, PHA moved forward to implement its notice of eviction. On October 15, 2003 PHA evicted Debtor from the Premises. However, on October 14, 2003 the Debtor filed the instant bankruptcy petition under Chapter 7 of the Bankrupt-

cy Code.[1] There is a disputed issue as to whether PHA had notice of the filing of the petition when the eviction was performed. Since neither Debtor nor PHA brought witnesses to the hearing, I make no findings on this issue. Rather PHA contends that for the purposes of the Motion, this factual finding is not necessary.[2] The thrust of its argument is that Debtor's possession of the Premises was unlawful as proclaimed by a court of law and as such, she had no property interest which the automatic stay would protect. To the extent her bare possession of the Premises can be construed to require relief from stay, PHA seeks such relief *nunc pro tunc*.

## DISCUSSION

As a threshold matter, I respectfully disagree with Debtor's interpretation of the District Court's ruling. While the Debtor is correct that Judge O'Neill held that Debtor was not entitled to a grievance proceeding under applicable regulations before she could be evicted, the basis for that conclusion is as binding on the Debtor as the holding itself.[3] The Court unequivocally determined that Debtor had "no protected property interest" in the Premises. I agree with PHA that this judicial determination dictates the result here.[4]

In *Cuffee v. Atlantic Business and Community Development Corporation (In re Atlantic Business and Community Development Corporation)*, 901 F.2d 325 (3d Cir.1990), the authority relied upon by Debtor, the Third Circuit Court of Appeals held that the debtor's tenancy at sufferance was property of the bankruptcy estate, the termination of which constituted a violation of the stay. This case is often cited for the proposition that "mere possession of property at the time of filing is sufficient to invoke the protection of the automatic stay." *Id.* at 328.

PHA argues that *Atlantic Business* is distinguishable from the instant facts in that the debtor there was in possession of the property "with the landlord's permission." *Id.*[5] Debtor, on the other hand,

---

1. On October 16, 2003 Lawrence Lichtenstein was appointed interim Chapter 7 trustee. He has not participated in this proceeding.

2. Should I disagree with PHA's position, the parties agreed that the factual issue would be relevant to Debtor's Complaint which charges PHA with willful violation of the stay.

3. Relitigation is foreclosed under the doctrine of issue preclusion if the following requirements are met: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; (4) the party against whom estoppel is invoked must be fully represented in the prior action. *Graham v. Internal Revenue Service*, 973 F.2d 1089 (3d Cir.1992). Debtor does not dispute the preclusive effect of the District Court's ruling but rather argues that the issue sought to be precluded is different than the issue determined by Judge O'Neill.

4. In so concluding, I make no finding as to whether Debtor has other claims against PHA

for its conduct in evicting Debtor. However, they would be state law matters which Debtor is free to pursue in the appropriate non-bankruptcy forum.

5. Under Pennsylvania law, a tenancy at sufferance has been explained by the Pennsylvania Superior Court as follows:

"A tenancy at sufferance is the lowest grade of estate in real property. The tenant may stay on the lessor's property so long as the lessor permits him to remain. As against the owner, a tenant at sufferance has no rights and only the barest indicia of ownership. The lessor is entitled to possession at any time and without notice."

*Palermo by Palermo v. Nails*, 334 Pa.Super. 544, 548, 483 A.2d 871, 873 (1984) (*quoting* Ladner, Conveyancing in Pennsylvania § 1.04(c) at 10). Thus, Atlantic Business as a tenant at sufferance had a right of possession until the landlord sought to evict it post-petition. Debtor as a squatter had no such right of possession at the time PHA sought to evict her.

never had a lawful property interest in the Premises as Judge O'Neill has found. In support of its position, PHA cites to a district court decision in this circuit where the court concluded that the stay is inapplicable notwithstanding the debtor's possession of the property.

In *St. Clair v. Beneficial Mortgage Co. (In re St. Clair)*, 251 B.R. 660 (D.N.J. 2000), *aff'd*, *St. Clair v. Wood*, 281 F.3d 224 (3d Cir.2001),[6] the bankruptcy court had entered an order granting Beneficial Mortgage Company ("Beneficial") relief from the stay to evict debtors as well as prospective relief from the automatic stay of any future bankruptcy case. The debtors' appeal of that ruling stayed the eviction but was dismissed as moot by reason of the debtors' lack of a property interest, or a good-faith colorable claim to possession of the property. In other words, the court concluded that the automatic stay would not be applicable to Beneficial's actions and therefore there was no need for prospective relief. Prior to the debtors' bankruptcy filing, Beneficial had secured a final judgment in foreclosure and a sheriff's deed and posted the eviction. Under New Jersey law, the debtors' right and title to the property were extinguished upon delivery of a sheriff's deed, and, at the time of the filing, the debtors at most had a possessory interest in the property. *Id.* at 665. The court concluded that under New Jersey law, the property would not be property of the debtors' estate upon the filing of a future bankruptcy. However, it also recognized *Atlantic Business* as holding that a possessory interest is within the reach of the automatic stay and that § 362(a)(3) also stays acts to recover property **from** the debtor's estate (*i.e.,* property over which the estate has control or possession). Accordingly, it was required to consider whether the removal of the debtors from possession of the property would be subject to the statutory stay.

The court found that the stay would not apply in a subsequent bankruptcy case, reasoning that while § 362(a)(3) stays acts to obtain possession from the estate, the use of the term "possession" requires that the estate have a good-faith, colorable claim to possession. This narrowed construction, it observed, would be consistent with the legislative purpose of the stay: to give the trustee an opportunity to familiarize himself with the property and determine whether it will be liquidated for the benefit of creditors. Noting that its conclusion conflicted with those cases that held that mere possession was protected by the stay, it nonetheless opined that it did not believe its ruling conflicted with *Atlantic Business* where the debtor was effectively in possession of the property with the lessor's permission when the bankruptcy case was commenced. This, the court concluded, gave the debtor at least an equitable interest contrary to the debtors in St. Clair.

While the reasoning of *St. Clair* is logical, the court enunciates a rule that has the potential of undermining the legislatively intended benefit of the automatic stay. It arguably gives license to parties to take post-petition action against a debtor when they unilaterally believe the debt-

6. The Court of Appeals affirmed the district court without rendering an opinion. The district court held that the appeal of the prospective bar on filing was moot because the debtor had no property interest that would be stayed in a subsequent bankruptcy case. It also refused to entertain jurisdiction over a companion motion for sanctions and contempt against the creditor. Whether one or both rulings were appealed is not stated nor is the identity of the appellant or the issue on appeal. Thus, I can draw no conclusion as to the Third Circuit's view of the lower court's reasoning for determining that the appeal was moot.

or's claim to the property is not "colorable." This is in contrast to the general understanding that a party takes action against a debtor at its peril in the face of the bankruptcy stay and is at risk of sanctions for a wilful violation of § 362 unless *nunc pro tunc* relief is granted.

■ I agree that there may be exceptions to the general proposition that possession confers a protected status in bankruptcy. The *St. Clair* court gives the example of a party returning home from an extended vacation and finding a debtor living there. It reasonably states that a party should not be compelled to seek relief from stay to remove that debtor who could have no good faith claim to possession. *Id.* at 667 n. 4. A trespasser is the easy case. Perhaps a court-adjudicated squatter, such as Debtor here, is a close example. However, I fear that the *St. Clair* rule, if not clearly contained, could have the unintended consequence of undermining the debtor's § 362(h) protection given its license for a movant to act on its belief that the estate does not have a "colorable claim" to the property. If the actor is incorrect in its belief, could it nonetheless argue that its intentional conduct was not wilful and ask the court to judge the reasonableness of the belief as a factor in assessing damages under § 362(h)? Opening this door could impair the chilling effect of § 362(h). As it is a simple matter to secure a declaration by the court as to the applicability of the stay, a relaxation of the prohibition on taking action to recover property where the sole interest is one of possession appears unwarranted. Moreover, given the unequivocal statement in *Atlantic Business* that "the language of Section 362 makes clear that mere possession of property at the time of filing is sufficient to invoke the protections of the automatic stay," 901 F.2d at 328, I would have suspected that the affirmance of *St.Clair* would have been accompanied by an opinion if the Court of Appeals intended to modify that pronouncement.

■ Pending any clarification on this issue, the result PHA seeks is available by granting its alternative request that I lift the stay *nunc pro tunc*. The discretion afforded a bankruptcy judge to grant relief from the automatic stay includes the authority to grant an annulment of the stay, thereby validating an act done in violation of the stay which would otherwise be deemed to be *void ab initio*. *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994) (annulment of the stay may validate a post-petition sheriff's sale as an exception to the *void ab initio* rule). Clearly this action is only taken in exceptional circumstances. *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108 (9th Cir.1995) (failure to obey stay caused by judge, not creditor and retrial would impose either a nonsensical result or impose a hardship due to cost). The factors which, if present, will warrant annulling the stay were reviewed with their decisional authority in the bankruptcy court's decision in *Siciliano on remand*, 167 B.R. 999 (Bankr. E.D.Pa.1994). They include whether the creditor had knowledge of the debtor's bankruptcy filing, whether the debtor is guilty of some inequitable conduct, such as abusive and/or repetitive bankruptcy filings, whether the debtor has encouraged the creditor to proceed notwithstanding the stay or only asserts the stay when it is unsuccessful in the outcome of an action it allowed to proceed, and whether the expenses of beginning anew with its enforcement remedy outweigh the benefit to anyone. *Id.* at 1007–09. None of these factors are dispositive alone, but require a weighing of the equities since the remedy is equitable in nature.

*In re Printup*, 264 B.R. 169 (Bankr. E.D.Tenn.2001), a case relied upon by PHA, offers a reasoned approach to this balancing exercise. The creditor had financed an automobile purchase by the debtor's husband who was prohibited from selling or removing it from the state without the lender's permission. The debtor claimed the vehicle as her property on her bankruptcy schedules because it was purchased for her use and she was responsible for its maintenance. Car payments were made from the couple's joint bank account. While the sales contract and certificate of title were in the husband's name, the buyer's order listed and was signed by both parties. The debtor testified that her name was deliberately omitted on the title documents to avoid disclosing to the Florida authorities that she was living in Tennessee in violation of a probation order. After filing bankruptcy, Debtor advised the car lender of her bankruptcy case, her claim of ownership of the car and her intention to reaffirm the debt. Nonetheless, the creditor repossessed the automobile because its records did not indicate the debtor had an ownership interest in the car. The Court found that the debtor had a possessory interest in the vehicle and the repossession violated the stay of § 362(a)(3) by exercising control over the debtor's interest. However, the Court denied the debtor's request for sanctions for a stay violation, rather finding it appropriate to retroactively annul the stay based on her conduct. The Court refused to condone her deception in concealing her ownership for one purpose (to hide her residency) and asserting it for another (to prevent seizure).[7]

I also find the decision in *Westbrook v. Albany Partners, Ltd. (In re Albany Partners Ltd.)*, 749 F.2d 670 (1st Cir.1984), instructive in resolving the instant Motion. In that case, the Court of Appeals concluded that the bankruptcy court had not abused its discretion by granting retroactive relief from stay where a mortgagee with knowledge of the debtor's bankruptcy filing had conducted a foreclosure sale. While acknowledging "the important congressional policy behind the automatic stay that requires courts to be especially hesitant to validate acts committed during the pendency of the stay," *id.* at 675, it nonetheless found that the court did not err in annulling the stay *ab initio* where the debtors' possessory interest had been previously adjudicated and rejected and the Chapter 11 petition had not been filed in good faith.

In this case, a federal district court has rejected the Debtor's claim to a grievance proceeding in furtherance of her continued attempt to obstruct an eviction from the Premises which she occupied as a squatter. The decision was based on the Court's finding that she had no lawful interest to remain in the Premises. As an end run around that Order, Debtor filed a Chapter 7 case to invoke the protection of the automatic stay to prevent her eviction.

---

7. The Court stated as follows:

Bank One's technical violation of the automatic stay and any adversity that the Debtor may have endured following the repossession flow *directly* from the Debtor's decision to conceal her purported interest in the Chrysler. The Debtor will not now be permitted to "use the stay unfairly as a shield" to escape the unfavorable consequences of her own duplicitous conduct.

*Id.* at 175 (*quoting Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir.1993)). In *Easley*, the Court recognized that the protections of the automatic stay should be unavailable to a debtor if (a) the debtor unreasonably withheld notice of the stay and the creditor would be prejudiced were the debtor allowed to use the stay as a defense, or (b) if "the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result." *Id.* The latter grounds are applicable here.

Having failed to do so, she sought to use this forum to recover possession of the Premises and damages.

■ While this Chapter 7 case may provide some legitimate relief to the Debtor, such as a discharge of her debts, the Debtor does not deny, nor could she given the timing of the bankruptcy filing after the District Court Order, that it was motivated by the imminent eviction. Yet a Chapter 7 case offers no right to a debtor to remain in property for which she has neither a legal nor equitable interest.[8] The filing was for the sole purpose of obstructing PHA,[9] and it will not be sanctioned by further obstruction in the form of an Order invalidating PHA's eviction and requiring it to reinstate Debtor into the Premises to which she has no claim of entitlement only to evict her again. Such an outcome would not only reward Debtor for her inequitable conduct and impose a financial and administrative burden on PHA but would lead to an absurd result. Rather I will annul the stay *nunc pro tunc* to the date of the filing of the Debtor's petition. In so doing, I make no findings regarding the validity of the eviction proceedings but merely hold that the bankruptcy filing did not stay the action that was taken.

Given my ruling that the stay was not in place to be violated, the pending Complaint filed by the Debtor against PHA for violation of the automatic stay does not state a claim. Accordingly, the Complaint will be dismissed with prejudice as well.

An Order consistent with this Opinion shall be entered.

### ORDER

**AND NOW**, this 25th day of November 2003, upon consideration of the Motion for Determination that the Automatic Stay Does Not Apply or, in the Alternative, for Relief from the Automatic Stay (the "Motion") filed by the Philadelphia Housing Authority, after notice and hearing, and for the reason stated in the accompanying Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED**. The automatic stay imposed by § 362(a) upon the filing of this bankruptcy case is **ANNULLED** *nunc pro tunc* to the date of filing, October 14, 2003, with respect to the Philadelphia Housing Authority's exercise of its legal remedies in connection with the residential unit occupied by Debtor at 3706 Brandywine Street, Philadelphia, Pennsylvania. It is further **ORDERED** that the above adversary proceeding is **DISMISSED AS MOOT**. The Clerk shall close Adv. No. 03–0114.

---

8. If Debtor believes that she has other claims regarding her occupation of the Premises, as her counsel suggested, query why she came here since such litigation does not affect the estate and is not properly a bankruptcy court matter.

9. At both hearings held in this matter, I asked Debtor's counsel what the purpose of this bankruptcy case was vis a vis PHA. His only explanation was that a bankruptcy filing would invoke the automatic stay. Counsel is not alone among the debtors' bar who believe that the easy access to an injunction on creditor action by the mere filing of a piece of paper with the Bankruptcy Clerk is an entitlement without regard to whether there is a bankruptcy purpose for the filing. As a result, the number of bankruptcy cases filed in this district has exploded, and the number of dismissals for failure to pursue a case after the creditor action (*e.g.*, sheriff's sale) has been blocked is distressing.