In re Madena SIMS, Debtor.

**WESTGATE VILLAGE APARTMENTS, Movant,**

v.

**Madena SIMS and Gary J. Gaertner, Trustee Respondents.**

Bankruptcy No. 97–23381–JKF. Motion No. RSH & D–1.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 14, 1997.

---

Eileen D. Yacknin, Neighborhood Legal Services, Pittsburgh, PA, for Debtor.

Gary J. Gaertner, Pittsburgh, PA, Chapter 13 Trustee.

Pamela J. Wentz, Rose, Schmidt, Hasley & DeSalle, P.C., Pittsburgh, PA, for Westgate Village Apartments.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is the motion of Debtor's landlord, Westgate Village Apartments, for relief from stay to permit it to complete eviction proceedings against Debtor. The leasehold is Debtor's residence. For the reasons which follow, Westgate's motion will be denied without prejudice.

Westgate and Debtor are parties to a subsidized lease agreement which provides, *inter alia*, that Debtor was to timely make all rent payments and was to recertify to Westgate's Management Office that her income continued to qualify her for eligibility to the subsidized unit. The obligation to pay rent and to recertify are mandated by the Department of Housing and Urban Development (HUD) pursuant to statute and regulations. *See, e.g.,* 42 U.S.C. § 1437a(a); 24 C.F.R. § 982.551, Obligations of participant; 24 C.F.R. § 966.4, Lease requirements.

Debtor filed an intent to vacate the premises in the spring of 1995 and again in the spring of 1996. *See* Order of October 7, 1996, in Debtor's chapter 7, Bankruptcy No. 96–22761, Motion No. 96–2612. She also failed to recertify her income to establish eligibility to the subsidy. In addition, Debtor did not report an increase in her income due to employment which fact could have affected her eligibility for subsidized housing or the amount of the subsidy. Westgate, therefore, issued a Notice of Termination to Debtor who failed to vacate the premises. Westgate then filed an action to repossess

---

1. This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

the unit based on the monetary and certain non-monetary defaults under the lease. Debtor responded by filing a chapter 7 petition.. Thus, this chapter 13 was preceded by a chapter 7 filed by Debtor in 1996. Prior to and after the filing of the chapter 7, Debtor failed to make her rent payments of $2.00 per month.[2] After an evidentiary hearing in the chapter 7, an order granting relief from stay[3] was entered October 7, 1996, at Bankruptcy No. 96–22761, Motion No. 96–2612. The order also stated that Debtor's lease was "deemed rejected insofar as this Chapter 7 bankruptcy estate is concerned...." *Id.* Debtor received a chapter 7 discharge on October 4, 1996. On April 21, 1997, a hearing was held before a district justice who entered an award in favor of Westgate.[4] Debtor failed to appeal timely[5] and Westgate scheduled an eviction for May 15, 1997. Debtor filed this chapter 13 on May 12, 1997.

■ Westgate asserts that it is entitled to relief from stay because Debtor's interest in the leased premises was terminated by the order entered in the chapter 7 on October 7, 1996. Westgate is incorrect. A lease is not terminated by the granting of relief from the automatic stay. It also is not terminated[6] by rejection of the lease, whether the rejection occurs by way of a motion or by operation of law under § 365. Rejection merely constitutes a breach of the lease and entitles the landlord to damages. 11 U.S.C. § 365(g)(1).

*See Matter of Austin Development Co.,* 19 F.3d ·1077 (5th Cir.), *cert. denied sub nom. Sowashee Venture v. EB, Inc.,* 513 U.S. 874, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994); *In re Modern Textile, Inc.,* 900 F.2d 1184 (8th Cir.1990); *Leasing Service Corp. v. First Tennessee Bank National Association,* 826 F.2d 434 (6th Cir.1987). In a chapter 13 case a debtor has until confirmation of the plan to assume or reject a lease. 11 U.S.C. §§ 1322(b)(7), 365(g)(1). No plan has been confirmed and no order·has been entered authorizing rejection. Thus, the lease has not been rejected in this chapter 13. The question remains, however, whether, under 11 U.S.C. § 1322(b)(7), Debtor may assume the lease inasmuch as it was rejected, in her prior chapter 7.

■ We note that the leasehold at issue would be of no value to a chapter 7 trustee inasmuch as it is Debtor's residence. The chapter 7 trustee in virtually every no asset case in which the debtor lives in·a rental unit would realize no benefit to the estate by assuming the lease. Thus, in virtually every no asset chapter 7, a residential lease will be deemed rejected by operation. of law under § 365(d)(1), sixty days after ·the order for relief. Westgate argues that rejection. of the lease in the chapter 7 and the provisions of § 1322(b)(7) preclude Debtor from assuming the lease in this chapter 13. Section 1322(b)(7) provides that the plan may, "sub-

2. The original lease, filed at docket number 30, provided for a rent of $14 per month. There is no dispute that the rent default, until Debtor failed to recertify her income, was calculated at $2 per month.

3. · Relief from stay was granted because Debtor had not paid rent for many months prepetition even though she was working and collecting welfare and had not paid rent postpetition. The court found that no equitable considerations were appropriate.

4. Westgate contends that possession was granted on non-monetary as well as monetary defaults and that the non-monetary defaults are not curable to avoid the eviction. The district justice's April 21, 1997, order, however, granted possession "if money judgment is not satisfied by time of eviction." Exhibit A to Debtor's Answer in Opposition to Motion for Relief from Stay, Docket Entry No. 18. The non-monetary defaults alleged in the complaint were failure to recertify and report changes in income. Annual recertification is required. *See, e.g.,* 24 C.F.R. §§ 5.617;

236.760. *See also* 24 C.F.R. § 290.9(b)(1) (rent is based on, *inter alia,* income certification). Debtor, however, has now submitted documents necessary for recertification. Westgate has not cited us to any provision of law that precludes Debtor from recertifying after a lapse. Therefore, we consider only the monetary defaults for purposes of this motion for relief from stay.

5. *See* Pennsylvania District Justice Rule 1002(B); Exhibit B to Debtor's Answer in Opposition to Motion for Relief from Stay, Docket Entry 18.

6. Even if the lease had terminated before the filing of the chapter 13, Debtor had a possessory interest to which the automatic stay applied when she filed this chapter 13. *In re Atlantic Business and Community Corporation,* 901 F.2d 325 (3d Cir.1990). Moreover, under Pennsylvania District Justice Rule 518 Debtor may cure the default and remain in the premises until the actual eviction.

ject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." Westgate cites *Matter of Benson,* 76 B.R. 381 (Bankr.D.Del.1987), in support of its argument. The facts of *Benson* render that case inapposite to the situation before us. In *Benson* an executory contract was deemed rejected in a chapter 7 prior to the time the case was converted to chapter 13. The court addressed the effect of rejection where, *in the same case,* the contract was rejected by operation of law and debtors later wanted to assume it, cure and pay through a chapter 13 plan. The instant case does not involve those facts.

Section 365 concerning assumption and rejection of executory contracts is derived from the Bankruptcy Act of 1898. Section 613(1) of the Act permitted the court to allow rejection of executory contracts in wage earner cases. Section 613(1) is identical to § 313(1) of Chapter XI of the Act and so cases applying that section applied to Chapter XIII cases as well. *See* 10 COLLIER ON BANKRUPTCY ¶ 23.03 at 82 (14th ed.1978). Section 613(1) (and § 313(1)) provides:

> Upon the filing of a petition, the court may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it—
>
> (1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate.

11 U.S.C. §§ 613(1), 313(1). Under the Act rejection under § 313(1), and, therefore, under § 613(1), was effective for all purposes *under the particular chapter.* Collier's states:

> Where an arrangement provides for the rejection of an executory contract, the rejection itself is not effective unless and until the arrangement is confirmed.... But where there is a rejection pursuant to § 313(1), the rejection is immediately effective; regardless of whether or not the

arrangement is later confirmed.; the rejection is effective not only for the purposes of Chapter XI, but for all purposes, and is binding upon the trustee in the event the case is subsequently administered in bankruptcy.

8 COLLIER ON BANKRUPTCY ¶ 3.15[9], p. 207 (14th ed.). The phrase "subsequently administered in bankruptcy" refers to conversion from a repayment bankruptcy to a liquidating case. *See* Rule 11–432(b) which provided

> Dismissal or Conversion to Bankruptcy for Want of Prosecution, Denial or Revocation of Confirmation, Default, or Termination of Plan. The court shall enter an order, after hearing on such notice as it may direct dismissing the case, or adjudicating the debtor a bankrupt if he has not been previously so adjudged, *or directing the bankruptcy case proceed,* whichever may be in the best interest of the estate....

8 COLLIER ON BANKRUPTCY ¶ 4.21[10] at n. 21, 459 (14th ed.1978) (emphasis added). As applied to the matter before us, the Bankruptcy Act of 1898 would establish that, once the lease was rejected in the chapter 7, it could not be assumed later *in the same case.* The Bankruptcy Code of 1978 did not change this. Thus, we conclude that rejection is final for purposes of § 1322(b)(7) only with respect to the particular case in which the contract was rejected.

■ In contrast to the facts in *Benson,* the chapter 7 in the matter before us was prosecuted to conclusion, a discharge was entered and the case was closed. Because the lease was rejected by the estate in the chapter 7, it reverted to Debtor. When she later filed this chapter 13 case, her property and possessory interests in the lease became property of this chapter 13 estate. The rejection in the chapter 7 did not affect Debtor's ability to assume or reject the lease under § 1322(b)(7) in the second case. The date of filing of the chapter 13 is the relevant date by which to measure what constitutes property of this estate. The lease remained viable on the filing date, despite Westgate's assertion to the contrary [7] and, therefore, is property of this estate.

---

**7.** The only basis upon which Westgate alleges

that the lease was terminated is the order grant-

The amount Debtor owes and the amount of the cure remain to be resolved. When a Section 8 tenant fails to recertify eligibility for subsidized housing, the fair market rent becomes the rent due. 24 C.F.R. § 290.9(b)(1).[8] Westgate seeks $620 per month.[9] Debtor's monthly income consists of $497 public assistance per month and $346 per month in food stamps. Her income is insufficient to meet the non-subsidized rent. Debtor contends in her brief that she has recertified her income to the landlord and, therefore, has cured that aspect of her default. However, as of the date of the hearing on this motion, the recertification had not been approved by HUD. Debtor's compliance with recertification procedures does not relieve her from the obligation to pay the fair market rent of the premises for the period during which she failed to certify her income.

Based on the foregoing, we conclude that Debtor may assume the lease in the plan if she can establish that she has the ability to cure defaults [10] and pay current rents. As a cure,[11] Debtor will have to pay all rental arrearages from the date she filed her chapter 7 case, rents prior to that date having been discharged in the chapter 7. Because she failed to recertify in a timely fashion, and unless she obtains a reduced, retroactive rate from HUD prior to plan confirmation, she must pay the fair market rent for the period during which she was not certified. If HUD refuses her recertification, Debtor concedes that, based on her current income, she will be unable to pay market rent and her plan will not be feasible, the lease would be rejected and, at that time, Westgate would be entitled to proceed with its eviction. We cannot determine the course of events at this time. The amount of arrearages, the cure amount, and the feasibility of the plan are all issues preserved for the plan confirmation hearing.

An appropriate order will be entered.

## ORDER

**AND NOW,** to-wit, this **14th** day of **October, 1997,** for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED** and **DECREED** that the Motion of Westgate Village Apartments for Relief from Automatic Stay is **DENIED** without prejudice.

---

ing relief from stay and deeming the lease rejected in the chapter 7 case. As noted, rejection is not the equivalent of termination or expiration of the lease. Debtor can assume it in this chapter 13 if she can cure the default, notwithstanding the order for possession. *See* D.J. Rule 518.

8. Section 290.9(b)(1) of title 24 of the Code of Federal Regulations provides that if the tenant fails to certify income, "the tenant must pay the unit rent as determined under the rent setting requirements in paragraph (a) of this section." *See also* 24 C.F.R. § 882.106 (Contract rents). Fair market rents are set by HUD. 24 C.F.R. § 888.111. Fair market rent is defined in 24 C.F.R. § 5.100 as "the rent that would be required to be paid in the particular housing market area in order to obtain privately owned, decent, safe and sanitary rental housing of modest (non-luxury) nature with suitable amenities." It includes utilities except telephone.

9. Debtor contests the fair market rent set by HUD and as stated by Westgate. We note that gross rents generally may not exceed the fair market rent, except in certain circumstances which, if met, permit an additional percentage. *See* 24 C.F.R. §§ 290.9(a); 882.106(a)(2); 886.110.

10. Westgate contends that the failure to timely recertify is a default that cannot be cured but has offered no authority in support of this position.

11. Westgate also asserts that it is entitled to relief from stay because Debtor has not paid any rent since the October 7, 1996, order. The amount necessary to cure the default cannot be ascertained on the current state of the record. The determination of that amount may affect Debtor's ability to cure through the plan.