

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-2004

# Levine v. Litman

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1790

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Levine v. Litman" (2004). *2004 Decisions.* Paper 975.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/975

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1790

LAWRENCE A. LEVINE,
                                        Appellant

v.

EUGENE M. LITMAN;
EUGENE M. LITMAN, Executor of the Estate of H. Raymond Litman;
JAMES W. McCARTHY

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 02-cv-02110
(Honorable Arthur J. Schwab)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2004

Before:  SCIRICA, *Chief Judge*, ROTH and McKEE, *Circuit Judges*

(Filed: February 26, 2004)

OPINION OF THE COURT

SCIRICA, *Chief Judge.*

In this bankruptcy proceeding, debtor Lawrence A. Levine sought to establish that creditors Eugene M. Litman, individually and as Executor of the Estate of H. Raymond Litman, and James W. McCarthy (collectively, "the Litman Group") committed extrinsic fraud that would justify invalidating a prior Pennsylvania judgment against Levine. The Bankruptcy Court found no evidence of extrinsic fraud and granted summary judgment in favor of the Litman Group. The court also held Levine's objection to the claim of the Litman Group was untimely. We will affirm.

## I.

The Litman Group owned 100% of the stock of Penn West Associates, Inc., which operated a nursing home known as the Wilkins House. On April 18, 1991, the Litman Group obtained a $4,518,000 mortgage on the Wilkins House, insured by the U.S. Department of Housing and Urban Development. In order to obtain mortgage insurance, the Litman Group entered into a Regulatory Agreement with HUD, requiring written HUD approval for the transfer any of its Penn West's interest.

On May 1, 1993, Lawrence Levine purchased 100% of the common stock of Penn West Assoc. from the Litman Group. Levine paid $55,000 at the time of closing and gave a $225,000 promissory note. Shortly after the stock transfer, the Department of Health conducted an inspection of the Wilkins House and discovered deficiencies related to patient care, administration and dietary services. Levine borrowed working capital

2

from the Litman Group to correct these deficiencies and to run the Wilkins House. When Levine was unable to repay these loans, the Litman Group brought suit in state court and, on September 26, 1994, obtained judgment by confession.

Levine petitioned to open judgment and assert counterclaims, and on March 13, 1996, judgment was opened. Levine alleged, *inter alia,* that the Litman Group had not obtained the requisite written approval from HUD for his 1993 stock purchase, and that the Litman Group had submitted a fraudulent promissory note to HUD in order to obtain approval for the transfer.[1] Had he known of the fraudulent misrepresentation, Levine argued, he would have reevaluated his decision to purchase the stock. Levine also maintained there was no obligation to pay back the money he borrowed from the Litman Group to rectify the financial deficiencies exposed by the HUD inspection because the Litman Group still owned the Wilkins House at the time of the inspection.

At the October 1996, non-jury trial, Litman Group member James McCarthy testified that HUD had not approved the transaction with Levine at the time of the May 1, 1993 closing. But McCarthy also testified that Levine knew there was no HUD approval and still wanted to proceed with the transaction. On March 18, 1997, the state judge entered a verdict in favor of the Litman Group. Following denial of post trial motions, Levine appealed but later withdrew it.

---

[1]According to Levine, the Litman Group removed the signature page from the April 10 Promissory Note signed by Levine and attached it to the May 29 Promissory Note submitted to HUD by the Litman Group.

On November 18, 1998, Levine filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On March 26, 1999, the Litman Group filed a proof of claim. On May 9, 2002, Levine filed an objection to the claim, which the Bankruptcy Court treated as an adversary complaint upon Litman's request. The Litman Group filed a motion for judgment on the pleadings, which the Bankruptcy Court converted to a motion for summary judgment as requested by Levine. After hearing arguments, the Bankruptcy Court granted the Litman Group's motion for summary judgment. The District Court affirmed.

On appeal, Levine claims the court wrongly held that evidence allegedly concealed by the Litman Group during the state court trial did not prevent him from receiving a fair trial. Levine also claims the Bankruptcy Court erred in finding his objection to the claim of the Litman Group to be untimely, and it erred in denying his motion to compel McCarthy's attendance at deposition.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 158(d). We exercise plenary review over the District Court's entry of summary judgment. *Curley v. Klem,* 298 F.3d 271, 276-77 (3d Cir. 2002). "Our review of the district court's decision effectively amounts to review of the bankruptcy court's opinion in the first instance." *Santa Fe Medical Servs., Inc. v. Segal (In re Segal),* 57 F.3d 342, 345 (3d Cir. 1995) (citations omitted). We

4

review Levine's claim that the court improperly restricted discovery for abuse of discretion. *Bradley v. United States,* 299 F.3d 197, 206-07 (3d Cir. 2002).

## III.

### A.

State court judgments are given the same full faith and credit by federal courts as would be given by the courts of the states from which they are taken. Full Faith and Credit Act, 28 U.S.C. § 1738; *Wright v. Georgia R.R. & Banking Co.,* 216 U.S. 420, 428-29 (1910). Federal courts honor the *res judicata* effects of final judgments in state courts, except under very limited circumstances. *American Surety Co. v. Baldwin,* 287 U.S. 156, 166 (1932); *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir. 1988). Because of this, a federal court may not reexamine the issues determined by a state judgment, nor may it allow an attack based on a procedural matter rejected in previous litigation. *Heiser v. Woodruff,* 327 U.S. 726, 736 (1946).

Nevertheless, a federal court may refuse to honor a state court judgment if the judgment was void *ab initio.* In *Pepper v. Litton,* the Supreme Court allowed a debtor to challenge a state court judgment in bankruptcy court on the ground that the judgment obtained by fraud was void *ab initio* for procedural reasons. 308 U.S. 295, 301-03 (1939) We have noted that a state court judgment may only be enjoined or otherwise upset by a federal court if a court of the issuing state would uphold the challenge. *In re Highway Truck Drivers & Helpers Local 107,* 888 F.2d 293, 299 (3d Cir. 1989).

5

Under Pennsylvania law, a final judgment challenged on the basis of fraud may be voided only for acts of extrinsic fraud, not for intrinsic fraud. *McEvoy v. Quaker City Cab Co.,* 110 A. 366, 368 (Pa. 1920); *McGary v. Lewis,* 119 A.2d 497 (Pa. 1956). Extrinsic fraud typically addresses procedural matters "collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." *McEvoy,* 110 A. at 368. Examples of extrinsic fraud might include a party securing a default judgment after falsely certifying that it served the defendant with the complaint; an attorney "selling out" his client's interest to benefit the opposing party; or a party keeping an opposing party away from court on the false promise of a compromise. *Id.* at 367; *In re Kovalchick,* 175 B.R. 863, 868 (Bankr. E.D. Pa. 1994). Accordingly, the Bankruptcy Court may void a state court judgment only if that judgment was procured by extrinsic fraud.

Levine contends the allegedly falsified document sent by the Litman Group to HUD and the Litman Group's alleged failure to disclose to him the lack of HUD approval constitute acts of extrinsic fraud. The District Court found, however, that these alleged instances would not affect Levine's ability to present "a fair submission of the controversy," but are instead intrinsic fraud. *See McGary,* 119 A.2d at 501. Intrinsic fraud may not nullify a prior state court judgment. Accordingly, the District Court properly upheld the March 18, 1997 state court judgment against Levine.

6

**B.**

Once a party has evidence of extrinsic fraud for purposes of voiding a Pennsylvania court judgment, it must act promptly. *Nixon v. Nixon,* 198 A. 154, 159 (Pa. 1938); *McGary,* 119 A.2d at 501; *accord DuFrayne v. FTB Mortgage Servs., Inc. (In re DuFrayne),* 194 B.R. 354 (Bankr. E.D. Pa. 1996). If the party has not acted promptly, it must provide a reasonable explanation for the delay. *Lincoln Bank v. C & H Agency, Inc.,* 456 A.2d 136, 140 (Pa. 1982) ("The crucial factor in determining whether the petition is timely is not the specific time which has elapsed, but the reasonableness of the explanation given for the delay."). An absence of prejudice towards the opposing party can also strengthen the position of the petitioner. *Id.*

Not only was there no extrinsic fraud, Levine did not act promptly. After learning of the alleged fraud on June 19, 2002, he failed to object to the Litman Group's claim until May 9, 2002, nearly four years later.[2] He offered no reason for the delay.[3]

---

[2]The Bankruptcy Court granted Levine safe harbor regarding the timeliness of his request under 11 U.S.C. § 108(c) for the period after November 18, 1998 (the day his bankruptcy case commenced). Section 108(c) reads:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of –
>> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>> (2) two years after the order for relief.

U.S.C. § 108(c).

[3]Although Levine cited no reasons for the delay in his appellate brief, his counsel

(continued...)

Furthermore, the Litman Group would be prejudiced by the delay since one of its defendants, Eugene Litman, a key witness, died after the Bankruptcy Court rendered its decision. The District Court denied Levine's objection to the claim, finding that Levine neither filed a timely collateral attack nor provided a reasonable explanation for the delay. We see no error.

**C.**

Levine claims the District Court erred in affirming the Bankruptcy Court's denial of his request to take McCarthy's deposition. But on appeal, Levine failed to file an affidavit stating his reasons for the request, as required by Fed. R. Civ. P. 56(f). This failure is usually fatal to a claim of insufficient discovery on appeal. *Bradley v. United States,* 299 F.3d 197, 207 (3d Cir. 2002).

Even overlooking Levine's failure to submit an affidavit, we do not see how further testimony from McCarthy would aid Levine. In his appellate brief, Levine contends that his deposition of McCarthy would likely demonstrate that (1) the Litman Group had not obtained prior HUD approval for the May 1, 1993 stock transaction, and (2) the Litman Group actively concealed the allegedly fraudulent letter sent to HUD. The contents of the letter merely confirmed McCarthy's October 1996 testimony that the

---

[3](...continued)
mentioned several reasons during the September 9, 2002 hearing. Counsel alluded to "overtures" to "try to reconstruct and settle that case" that were refused by the Litman Group; "the issue of the RICO action;" and the fact that they were "fighting the Penn West bankruptcy at that time."

Litman Group did not receive HUD approval prior to the transaction. A deposition of McCarthy at this point would add nothing material. The District Court correctly affirmed the Bankruptcy Court's denial of Levine's request to depose McCarthy.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.