**In re Deanna E. TURNER, Debtor.**

**Crawford Square Community, Movant,**

**v.**

**Deanna E. Turner, Respondent.**

**No. 04–31320 TPA.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 14, 2005.

See also 2005 WL 1404782.

Eileen D. Yacknin, Esq., Pittsburgh, PA, for Debtor.

## *MEMORANDUM OPINION*

THOMAS P. AGRESTI, Bankruptcy Judge.

The matter currently before the Court is the *Motion for Relief from Stay or in the Alternative Motion to Dismiss Case with Prejudice and Motion for Sanctions* filed by Crawford Square Community, the land-lord of the Debtor. For the reasons ex-pressed below, that portion of the Motion seeking Relief from Stay is granted. Be-cause relief from stay will be granted for the stated reasons, the alternative request for dismissal is denied. Although the present Motion also includes a request for sanctions, a separate and distinct Motion for Sanctions was simultaneously filed by the landlord. Accordingly, we will address the issue of sanctions in response to the separately filed Motion for Sanctions.

## *FACTS*

On November 30, 2000 the Debtor, De-anna Turner ("Turner") and Crawford Square Community entered into a residen-tial lease of a townhouse unit. Crawford Square Community ("Crawford") provides low income housing to tenants pursuant to a tax credit program established by *26 I.R.C. § 42* and known as the Low Income Housing Tax Credit Program ("LIHTC"). The initial lease term was for a period of one year commencing December 1, 2000.

Turner was scheduled to be evicted by Crawford on September 1, 2004. On Au-gust 30, 2004, prior to the scheduled evic-tion, Turner filed her voluntary Chapter 13 petition. On October 15, 2004 Crawford filed this Motion for Relief from Stay to pursue the Debtor's eviction in state court, and in the alternative, a Motion to Dismiss the current case with prejudice coupled with a request for sanctions.

Prior to the filing of this case, the par-ties had long been engaged in litigation before several courts including an Alleghe-ny County, PA district justice, the Court of Common Pleas of Allegheny County, PA and this Bankruptcy Court. The litigation began in October, 2001 when Crawford brought its original landlord tenant action at the district justice level. Upon receipt of an unfavorable decision Turner appeal-ed to the Court of Common Pleas ("state

court".) The landlord/tenant appeal was subsequently consolidated with a separate equity action brought by Turner seeking injunctive relief from the eviction claim. In September 2003, a nonjury trial was held in state court. On September 30, 2003 a verdict was entered awarding Crawford possession as well as damages in the amount of $13,968.25 in the landlord/tenant action. The damage award was based on past due rent of $13,130 and prejudgment interest of $838.25. The verdict did not specify the calculation made by the state court in determining the judgment amount. At the time, however, Turner's rent was $525 a month if timely paid, or, $575 a month if not timely paid. In the equity action, verdict was entered in favor of Crawford and Turner's requested injunctive relief denied.

At the time of trial in September 2003, Turner had not paid rent for December 2000 or from October 2001 up to and including the time of trial with the exception of four months rent at $39 per month, the amount payable if rent would have been subsidized through the use of a "Section 8" voucher. The situation had not changed on the date the Motion for Relief was filed. Turner had paid no rent to Crawford.[1]

Following trial in the state court, post-trial motions were filed by Turner which were denied. After receiving the adverse judgment Turner appealed the state court decision in the landlord/tenant action to the Pennsylvania Superior Court. No separate appeal was filed regarding the equity action. No stay pending appeal was ever sought or obtained by Turner.

In 2001 a discrimination complaint was filed by Turner with the Department of Housing and Urban Development ("HUD.") This complaint also was eventually denied. Thereafter, in September 2004, Turner filed an action against HUD in the United States District Court for the Western District of Pennsylvania ("District Court.") This Court has recently been advised that the District Court has entered an Order dismissing the action in response to HUD's motion to dismiss.

In August, 2004 Turner also filed a separate action in the District Court against Crawford and its management company. The basis of the District Court complaint was alleged violations of the Fair Housing Act emanating out of the landlord/tenant relationship between Turner and Crawford which was the subject of the state court action and the current Motion for Relief from Stay. Along with the complaint, Turner sought preliminary injunctive relief but did not seek a temporary restraining order. On August 30, 2004 Turner filed her current bankruptcy petition before any action could be taken in the District Court matter.

On November 7, 2001, Turner filed her first Chapter 13 bankruptcy.[2] Crawford also sought relief from stay during the course of that proceeding. On November 21, 2002 relief from stay was granted but stayed to provide Turner the opportunity to provide Crawford a current "Section 8" voucher on or before January 3, 2003. When the voucher was not timely presented, on January 7, 2003 Crawford filed an affidavit of default. Turner's attempt to compel Crawford to rescind its affidavit of default was denied and on April 9, 2003, the bankruptcy was dismissed.

---

**1.** Based on the record currently before the Court, the Debtor has estimated rent due Crawford in the amount of $25 per month and filed a Chapter 13 Plan to that effect. Plan payments are current since October, 2004. In its Proof of Claim, Crawford Square claims rent is currently set at $595 per month.

**2.** At Case No. 01–31339–JKF

A constant theme throughout the various proceedings has centered around issues involving the acceptance and non-acceptance of a "Section 8" voucher by Crawford, the effect of past accumulated rent and the implications for future rent, and, the status of the lease. These issues have been repeatedly argued by the parties.

At the time of filing this petition, Crawford claims to be owed approximately $21,293. This amount is based on the state court judgment of $13,968.25, additional post judgment interest of $726.66 and accrued, unpaid rent since the date of the state court judgment. Crawford now seeks relief from stay to pursue its eviction action which was stayed by this bankruptcy.

## DISCUSSION

By Order dated January 21, 2005 issued following the preliminary hearing on the Motion for Relief from Stay, in an attempt to streamline and narrow the issues, the Court asked the Debtor to provide some focused direction in support of her position and gave Turner the opportunity to file a written submission directing the Court to "specific" language in the documents, statute or case law to support her argument. In the same Order, the Court requested Turner to advise the Court of her position regarding the need for a final hearing on the Motion for Relief From Stay. Crawford previously agreed to allow the case to proceed based upon the representations of counsel since there was no dispute as to the relevant facts. Debtor agreed with Crawford's position with one reservation. Turner believed the Court was required to

allow testimony concerning her then pending federal court action against Crawford.

In response to the January 21, 2005 Order, and representative of the other pleadings filed in this matter, the Debtor filed a 41 page "Response" in the form of a brief/memorandum of law accompanied by 62 pages of exhibits.[3] The first 38 pages were devoted to directing the Court to the "specific" language in support of her position that the lease cannot naturally end under its own, expressly stated period of duration, rather "termination" must first be approved by a separate and specific "judicial determination" and/or "judicial resolution." The remaining 2 ½ pages of the Reply were directed to the Court's inquiry as to the need for additional evidence or testimony to resolve the Motion for Relief from Stay.

In response to the latter inquiry, the Debtor cites numerous cases for the proposition that she is entitled to provide testimony as to the basis of the federal court action, not for this Court to decide the matter, but simply so that it is aware that "defenses, affirmative defenses, counter claims, and offsets" · exist to Crawford's disputed claim regarding Turner's failure to pay rent. Turner claims she is entitled to present "some evidence" of these defenses so as to sufficiently enable the Court to make "a preliminary determination" as to whether she is likely to prevail on those claims or defenses raised in the then-pending District Court action. The Debtor claimed that evidence of the potential likelihood of success in the pending litigation, reviewed in a "summary manner",[4] was necessary for the Court to con-

---

3. In turn, Crawford submitted its own 49 page "Reply." ·

4. Relying on the strength of the cited decisions the Debtor claimed it incumbent upon this Court to "evaluate, however superficially,

the merits of Debtor's pending federal court claims against Crawford, which, if established, would not only offset the entire claim of Crawford but obligate Crawford to compensate the Debtor for additional damages, as well." *Debtor's Reply and Response to Janu-*

sider in determining Crawford's "equitable right to relief" in the present proceedings.

Without commenting on the merits of Turner's position in this regard, this Court has reviewed the most essential filing in the District Court action in regards to the summary judgment proceedings, i.e., the District Court's Opinion which granted summary judgment in favor of Crawford and dismissed the Debtor's District Court claim.[5] As such, the Court notes that the pending District Court proceeding has been given the appropriate weight. In light of the District Court ruling, there is no need for any further evidentiary hearing involving this matter. The District Court decision renders the Debtor's request in this regard moot. As such, the Parties have acquiesced in this Court's ability to decide the matter before it on the current record.[6] The matter is now ripe for consideration.

Relief from stay is being sought by Crawford on the basis of *11 U.S.C. § 362(d)(1)* which provides, in relevant part,

11 U.S.C § 362 Automatic Stay

. . .

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;. . . .

*11 U.S.C. § 362(d)(1)*

The "cause" alleged by Crawford is that the lease with Turner expired, i.e., naturally ended by its express terms before the filing of the bankruptcy. Accordingly, Crawford argues Turner had no legal or equitable interest in the lease at the time of filing and none can be resurrected by the filing of the current bankruptcy. Crawford asserts that no adequate protection exists since it has not been paid since October 2001, with the exception of four payments of $39 each. In light of the state court judgment, rent accrued at $525 per month, and the Debtor by her own admission does not have the means to make such monthly payments or cure the outstanding back rent claim of more than $21,000 pursuant to *11 U.S.C. § 365(d)(1)*.

Turner first argues that the lease was not terminated prepetition because physical eviction had not actually taken place at the time of filing. Turner claims that because a tenant has the right to cure a monetary breach until the time of actual dispossession, Turner retained an interest in the property and the right to cure at the time of filing bankruptcy. Turner believes that despite the existence of the state court order of possession, the lease is not terminated when a Chapter 13 petition is

---

*ary 21, 2005 Order of Court,* Docket No. 52, Page 40. Turner acknowledged that the Court can fulfill its "responsibility" to her without convening an evidentiary hearing but by simply reviewing the pleadings in the District Court action with emphasis on the summary judgment proceedings involving Crawford.

**5.** *Turner v. Crawford Square Apartments III, L.P., et al,* C.A. No. 04–1243 (Opinion, Lancaster J., 3/17/05.) See Supplement to Crawford Square Community's Motion for Relief

from Stay filed on March 23, 2005 at Document No. 61, Ex. B.

**6.** This Court does note that for purposes of determination of this matter, all of the exhibits appended to the Debtor's "Response" to the January 21, 2005 Order, as well as all other exhibits appended to the various pleadings submitted by the Parties, are accepted as part of the record and were reviewed by the Court prior to rendering its decision. Crawford posed no objection to the Court's use of these documents in rendering its decision.

filed prior to execution of a writ of possession and receipt of actual physical eviction.

Turner also disputes that the lease expired prepetition claiming that leases for public housing tenants cannot expire under their own terms. Turner argues that despite the natural, apparent expiration of the lease by its express written terms, such "expiration" is prohibited under Crawford's assumed obligations pursuant to "LIHTC". Alternately, Turner argues that the lease cannot be terminated based solely on its "natural" expiration according to its stated term. Rather, she claims a tenant must first be evicted for "good cause" and what constitutes "good cause" requires a *prior* judicial determination by a court vested with appropriate authority. Turner argues in her most recent reply/brief that a "good cause" judicial determination is required before a lease "expiration" or "termination" can occur.

### The State Court Judgment

The state court judgment was originally entered after a nonjury trial on September 30, 2003. Crawford was awarded possession and damages in the total amount of $13,968.25. Upon denial of post-trial motions and Turner's subsequent appeal on April 26, 2004, the state court trial judge filed his opinion in support of the judgment setting forth the facts that were established at trial. Included in those facts were Turner's delinquency and failure to pay rent for certain months. The state court specifically found that Crawford provided Turner the requisite notice to vacate the premises and that Crawford

did not wrongfully refuse to accept a Section 8 voucher from Turner. It also found that Crawford's eviction attempts were based on failure to pay rent and not retaliation. Finally, because of Turner's breach of the lease due to her failure to pay rent, expressly requiring that possession be delivered to Crawford, the state court judgment found, at least implicitly if not expressly, that the lease was terminated prepetition.[7] There can be no other interpretation of the state court judgment.

Despite Turner's consistent refusal to recognize the efficacy of the state court judgment, this Court cannot ignore its existence and effect. The judgment rendered in the state court proceeding is final as to the matters decided therein unless and until overturned. *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872 (1996), *In re McGinley*, 2002 WL 1205033 (Bankr. E.D.Pa.2002), *Yonkers v. Donora Borough*, 702 A.2d 618, 620 (Pa.Cmwlth.1997); *Rutter v. Rivera*, 74 Fed.Appx. 182, 187–88 (3d Cir.2003); *Huntley v. City of Johnstown*, 2004 WL 627157, *4, f.n. 5 (W.D.Pa.2004); 10 *Standard Pa. Practice*, § 65:72. As noted, the state court judgment was appealed by Turner to the Pennsylvania Superior Court which has since dismissed the appeal in light of the pending bankruptcy.[8] That decision has long since been made and this court has no jurisdictional ability to review it. *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. ——, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (*Rooker Feldman* doctrine confined to cases brought by

---

7. See Crawford Square *Motion for Sanctions pursuant to Bankruptcy Rule 9011*, filed on October 15, 2004, Document No. 23, Exhibit B.

8. Even while the appeal was pending, for purposes of collateral estoppel or res judicata the decision was final unless or until reversed. *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872 (1996). In November 2004, the Superior Court dismissed the appeal without prejudice. Although Turner has already appealed the decisions of the District Court in favor of HUD and Crawford, those judgments are also deemed final unless or until reversed on appeal. *Shaffer v. Smith, supra.; In re McGinley, supra; Huntley v. City of Johnstown, supra.*

"state court losers" complaining of injuries caused by state court judgments rendered before the federal district court proceedings and inviting review and rejection of those judgments)[9]; *Kirby v. City of Philadelphia*, 905 F.Supp. 222, 225 (E.D.Pa. 1995) ("Federal district courts lack subject matter jurisdiction to review final state court adjudications or to evaluate constitutional claims that are 'inextricably intertwined' with final state court adjudications."); *Patti v. Fred Ehrlich, PC*, 304 B.R. 182 (E.D.Pa.2003).

■■■ Even if this court had such an ability, Turner is precluded from relitigating those matters previously raised and determined in the state court proceeding under the doctrine of collateral estoppel, now more commonly referred to as "issue preclusion." "The doctrine of issue preclusion derives from the principle that 'latter courts should honor the first actual decision of a matter that has been actually litigated'". *United Fed. Leasing, Inc. v. U.S.*, 126 Fed.Appx. 60, 61–62 (3d Cir. 2005). The purpose of issue preclusion is to protect litigants from the dual burden of re-litigating an issue and the promotion of judicial economy through prevention of needless litigation. *Id.citing O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, f.n. 10 (3d Cir.1991). Here, the nonjury verdict and opinion of the state court must be given recognition and the same full faith and credit by this Court as would be given it by other Pennsylvania courts. *Full Faith and Credit Act, 28 U.S.C. § 1738; American Surety Co. v. Baldwin*, 287 U.S.

156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932); *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988); *Levine v. Litman*, 91 Fed.Appx. 217, 219–20 (3d Cir.2004).

■■■ When considering the effect of a prior state court judgment this Court is required to "inquire into the scope of state preclusion law." *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553 (3d Cir. 1994) *cert. denied* 513 U.S. 986, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994). In Pennsylvania, issue preclusion applies where four factors have been met. Those four factors are: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) final judgment on the merits was reached; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and, (4) the party against whom the issue is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *In re Stetar*, 323 B.R. 646, 649 (Bankr.W.D.Pa. 2005); In *re Estate Partners, Ltd.*, 320 B.R. 295, 307 (Bankr.W.D.Pa.2005), *citing Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 358 (3d Cir.1999).

■ The elements of issue preclusion have been met in this case. The first two elements are established by the state court determination of the amount of past due rent owed and Crawford's right to possession. Additionally, the state court determined the issue of Crawford's required acceptance of the Section 8 voucher. The

---

**9.** In her recently filed *Supplement/Addendum to Respondent's Answer in Opposition to Motion for Relief from Stay*, Turner apprised this Court of the *Exxon* decision, of which this Court was already aware. Turner asserts that her potential to prevail in District Court has been greatly enhanced by the *Exxon* decision and, therefore, relief from stay should not be granted. The District Court decision is final unless or until reversed. *Shaffer v. Smith*,

*supra.; In re McGinley, supra; Huntley v. City of Johnstown, supra.* Even if this was not the present standard, this Court would not postpone its decision or deny relief from stay based on Turner's analysis of *Exxon*. This Court does not share Turner's interpretation of *Exxon* or *Exxon's* application to the facts of this case or the Memorandum Order issued by the District Court. The effect of *Exxon* on that matter us not for this Court to decide.

third element is met since the parties to the prior litigation are the same as in the present matter. Turner had a full and fair opportunity to litigate the issues in state court, and therefore, the fourth element also has been met.

In addition to the prepetition, final resolution of the lease issues in the state court, there has since been a decision rendered in the District Court also in favor of Crawford. That proceeding appears to have been based on the same set of facts and circumstances between these same parties. The District Court granted summary judgment to Crawford for lack of subject matter jurisdiction based on the *Rooker Feldman* doctrine. In the District Court action, Turner claimed that Crawford failed to reasonably accommodate her in light of her claimed disability when it refused to accept her Section 8 voucher. The District Court found that the constitutional claims at issue in its case were inextricably intertwined with the state court's decision. *See Deanna Turner v. Crawford Apartments III, L.P. and McCormack Baron Management Services, Inc.*, C.A. No. 04–1243, Memorandum Order, p. 5 (W.D.Pa.2005). The District Court noted that all of the litigation instituted by Turner revolved around Crawford's refusal to accept her Section 8 voucher and Crawford's attempts to evict her. *Id.* at p. 2. Accordingly, the District Court concluded that granting relief in favor of Turner would render the state court's decision ineffectual, ignoring the mandates of the *Rooker Feldman* doctrine.

District Court rulings are entitled to substantial deference by bankruptcy courts. *In re Brown*, 244 B.R. 62, 64 (Bankr.D.N.J.2000). Deference is particularly applicable in this case where the facts and circumstances appear to be the same as those presented to the District Court. As in the District Court case, the facts of this proceeding are "intertwined" with those of both the federal and state court decisions.[10] They involve Turner's leasehold interest, her failure to timely pay rent, Crawford's efforts at possession and Turner's various attempts to utilize a Section 8 voucher.

### Debtor's Interest in the Leasehold Property

*Section § 541* provides that property of the estate consists of all legal and equitable interests of the debtor. *11 U.S.C. § 541(a)(1)*. Where, upon commencement of the case, there is no interest of the debtor in a lease, none can thereafter be resurrected or created. *Matter of Triangle Laboratories, Inc.*, 663 F.2d 463 (3d Cir.1981). *McDaniel v. Metropolis Towers Apartment Corp.*, 2002 WL 1065874 (D.N.J.2002); *In re Island Helicopters, Inc.*, 211 B.R. 453 (Bankr. E.D.N.Y.1997).

Under Pennsylvania law, a tenant has the right to cure a monetary default under a lease until the execution of the writ of possession. Accordingly, where the default is based solely on monetary defaults, a lease is not terminated until actual execution of the writ of possession. *In re Vitanza*, 1998 WL 808629 *10

---

**10.** The District Court decision is further significant in that Turner sought to have this Court consider the merits of the pending federal court claims against Crawford for purposes of establishing her potential compensation from Crawford and offsets to its claim. As previously noted, Turner further argued that a limited evidentiary hearing may be required regarding any disputed facts. As previously noted, even assuming that this Court was to consider evaluating the District Court claim, such evaluation is no longer needed. The state and now federal decisions cannot be ignored. *28 U.S.C. § 1738; Levine v. Litman*, 91 Fed.Appx. 217 (3d Cir.2004).

(Bankr.E.D.Pa.1998). Therefore, in Pennsylvania, where a tenant, who is the subject of an order for possession based solely on monetary default, maintains mere possession prior to execution of a writ of possession, the tenant may have an equitable interest in an unexpired lease. *In re Atlantic Bus. and Cmty. Dev. Corp.*, 901 F.2d 325 (3d Cir.1990); *In re Sims*, 213 B.R. 641 (Bankr.W.D.Pa.1997.) As such, even though an unexpired residential lease may have terminated due to a prepetition failure to pay rent, a tenant/debtor may be able to assume it in the context of a Chapter 13 plan. *Matter of DiCamillo*, 206 B.R. 64 (Bankr.D.N.J.1997). However, a mere possessory interest (for instance, a "squatter" or tenant at sufferance) in an expired lease at the time of filing is not enough to sustain the protections of the automatic stay. *In re Hill*, 307 B.R. 821 (Bankr.W.D.Pa.2004); *In re Blaylock*, 301 B.R. 443 (Bankr.E.D.Pa.2003.)

 Turner seeks to have her lease with Crawford determined to be "unexpired" so that she may assume it pursuant to *11 U.S.C. § 365(b)(1)* and cure any default, i.e., pay the difference between the "Section 8" voucher credit and the $39 monthly amount owed. Where an unexpired lease exists at the time of filing, a debtor may assume the lease upon providing cure or adequate assurance of prompt cure. *11 U.S.C. § 365(b)(1)*. However, where a lease has expired at the time of filing, there is nothing for the debtor to assume, even if it can be shown that adequate assurance exists. *In re Bacon*, 212 B.R. 66, 70 (Bankr.E.D.Pa.1997) *citing Matter of Triangle Laboratories, Inc.*, 663 F.2d 463, 468 (3d Cir.1981); *In re Lloyd*, 1992 WL 167047 *1 (Bankr.E.D.Pa.1992).

Turner initially argued at great length that eviction of a public housing tenant can only be for "good cause" which required a judicial determination. Turner claimed that under its Regulatory Agreement with the Pennsylvania Housing Finance Agency, Crawford is prohibited from terminating a lease except for serious or repeated violations of the terms and conditions of the lease, violation of applicable law or other "good cause." Unfortunately, there are few reported cases regarding the application of the "good cause" eviction standard specifically under LIHTC. Of those cases reported, the facts of the instant case are clearly distinguishable.[11]

"Good cause" in this instance is simply not determinative. A "good cause" deter-

---

**11.** Turner relies heavily on the case of *Cimarron Village Townhomes, Ltd. v. Washington*, 1999 WL 538110 (Minn.App.1999). In *Cimarron*, where a landlord under LIHTC declined to renew a tenant's lease at the conclusion of the one year lease term, the court found the eviction without "good cause" and not permitted while the landlord was required to comply with the tax credit program. Unlike the present case, there was no indication that the tenant had failed to pay rent during the term of the existing lease or that a final state court judgment addressing the matter had previously been obtained. In *Lend Lease Apartment Mgmt. LLC v. Stribling, et.al.*, 2004 WL 2595805 (Conn.Super.2004) the court, following *Cimarron*, required a "good cause" eviction where the landlord failed to give proper notice as required by Connecticut statute and case law. In the present case, unlike *Stribling*, the issue of notice had previously been addressed and resolved against Turner in the state court proceeding. *Lend Lease* is further distinguishable since the tenant possessed a valid "Section 8" voucher. Here, the state court specifically found that not to be the case. Also relied on by Turner is *In re Zerance*, 2003 WL 261704 (Bankr.M.D.Pa. 2003) claiming that a residential lease tenant has a right to cure monetary defaults prior to execution for possession. As throughout these proceedings, Turner improperly equates "termination" of the lease with "expiration" or the natural ending of the lease. Unlike this case, in *Zerance*, no judgment of possession had previously been entered or final determination rendered.

mination is applicable in the context of eviction or termination of a lease prior to its expiration. In this case, "good cause" for eviction or termination is not an issue at all. Even if "good cause" for eviction was the issue, that matter has been previously determined.

■ Here, there exists a prepetition judgment for possession and damages based on unpaid rent. Unpaid rent constitutes "good cause" for eviction. Turner continually chooses to ignore the existence or validity of the state court judgment. As a result of the order for possession and pursuant to the language of the lease,[12] "good cause" for eviction has been established. As noted, the final, state court judgment cannot be ignored. The filing of Turner's bankruptcy does not in any way eliminate the validity or relevance of the findings or determination of the state court. Moreover, the appeal of the decision has been dismissed.

■ In an argument not raised in the initial pleadings or at the various hearings in this matter, but asserted in her most recent "reply/brief" filed in response to the January 21, 2005 Order, Turner now appears to be arguing that a judicial determination is also required to pronounce a lease "expired". Turner attempts to patch together various provisions among the related documents to support her most recently raised argument. However, the provisions of the Management and Regulatory Agreements cited for support refer to the "termination" or "eviction" of a tenant, not the natural expiration of a lease by its own terms.

First, Turner refers to the following provisions of the Regulatory Agreement and Management Agreement for the proposition that the tenancy is a continuing one:

The lease must include a mechanism which shall allow termination of the agreement and eviction for violation. An Owner may not terminate the tenancy or refuse to renew the lease of a resident except for serious or repeated violation of the terms and conditions of the lease; for violation of applicable federal, state or local law; for completion of the transitional housing tenancy period; or for other good cause.

*Management Agreement, ¶ 8.e.iii.*[13]

Turner contends that this language provides that a lease term can *never* expire by its own terms. The language, in fact, suggests the opposite. It provides, in part, that a lease may not be terminated *except* for completion of the "housing tenancy period". Instead, Turner reads the provision to require the existence of the lease, *ad infinitum*, except where there is judicially determined "good cause" for termination.

Turner next contends that Crawford is forbidden from evicting a tenant, even for good cause, unless the tenant has been afforded a legal proceeding referencing Paragraph 8, e.x.(e) of the Management Agreement.

---

**12.** The lease between the parties contained several relevant provisions including the starting and ending dates of the lease (¶ 3), renewal of the lease (¶ 4) and tenant's ability to break the lease (¶ 42). On October 16, 2001, consistent with applicable Pennsylvania law, Crawford sent Turner a "notice to quit" letter clearly expressing its unwillingness to continue leasing to her following the expiration of her current lease. Crawford clearly advised Turner that the term of her lease ended on November 30, 2001 and that the October 16, 2001 letter was to serve as notice for Turner to vacate on or before November 30, 2001. Throughout all the proceedings Crawford has been resolute in its position that the prior lease naturally ended by its terms and no new lease is available.

**13.** There is a similar provision in the Regulatory Agreement at ¶ 11.

x. The lease *may not* contain any of the following provisions:

(e) Waiver of legal proceedings. Agreement by the resident that the Owner may evict the resident or household members without instituting a civil court proceeding in which the resident has the opportunity to present a defense, or before a court decision on the rights of the parties.

*Management Agreement*, ¶ *8.e.x.(e).*[14]

From this provision Turner somehow extrapolates that, regardless of the prior state court judgment, she is entitled to a separate judicial determination regarding nonrenewal of her lease. That is not how this Court interprets this provision. Rather, the cited provision deals exclusively with "termination" and "eviction" *of an existing lease.* This Court does not read into the language of the purportedly relevant provisions of the Management Agreement or the Regulatory Agreement a parallel requirement of a judicial determination for "expiration" of a lease.

▇ This most recent argument highlights Turner's recurring persistence in confusing the concept of "expiration" of the lease with "termination" of the lease. The distinction between the terms is relevant in determining whether a lease is "unexpired" for purposes of *11 U.S.C. § 365.* "Expiration" is defined as " [a] coming to an end; esp., a formal termination on a closing date". BLACK'S LAW DICTIONARY, (8th ed.2004). "Expiration" is the natural end or conclusion to a contract or lease based solely on the passage of time. *In re Morgan*, 181 B.R. 579 (Bankr. N.D.Ala.1994). "Termination" suggests a premature end as a result of a breach or forfeiture. *Id.* It is defined as "the act of ending something; extinguishment". BLACK'S LAW DICTIONARY, (8th ed.2004). The distinction between these terms has previously been examined in the context of *11 U.S.C. § 365.* Courts have declined to accept the terms as synonymous. Such a conclusion would render language in other subsections superfluous, such as in *11 U.S.C. § 365(c)(3)*, or meaningless, as in 11 *U.S.C. § 541(b)(2)* and *§ 362(b)(10).* *Morgan*, 181 B.R. at 583; *In re Talley*, 69 B.R. 219 (Bankr.M.D.Tenn.1986); *Matter of DiCamillo*, 206 B.R. 64 (Bankr.D.N.J. 1997).[15]

Despite Turner's claims to the contrary, the Seventh Circuit Court of Appeals in *Robinson v. Chicago Housing Authority*, 54 F.3d 316 (7th Cir.1995) did not draw a distinction between the terms "expired" and "terminated" for purposes of assumption of residential leases. Furthermore, the decision was based on Illinois state law which made no distinction between "termination" and "expiration" of a lease. *DiCamillo* noted that cases look to state law to determine the "end" of a leasehold interest, even though what might constitute the "end" may differ.

▇ The lease in question had an initial term of one year unless previously terminated by the parties. Otherwise, the lease becomes a month to month tenancy. *See Motion for Relief from Stay, Exhibit*

---

**14.** There is parallel language found in the Regulatory Agreement at ¶ 11.e.

**15.** In *Morgan,* the plain meaning of the two terms was examined pursuant to *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). It was determined that a *debtor could assume a lease that* had been *terminated* where the debtor at the time of filing held a possessory interest in the property. If the lease had expired by its own terms prepetition, however, there was nothing to assume. In *DiCamillo,* the court followed *Morgan* and *Talley* drawing a distinction between "expiration" and "termination" as reflecting more closely the actual language of the statute.

*A,* Residential Lease, ¶ 3. The plain language of the various, relevant lease provisions at issue in this case suggest a specific end to the lease. The facts require a finding that no month to month tenancy was created. Crawford did not renew the lease nor indicated any intent to do so. Rather, by Crawford's October 16, 2001 letter, as found by the state court, Crawford made clear that it chose not to renew the lease. Upon the expiration of the one year initial term, the lease, therefore, expired. It naturally ended. As such, the Debtor possessed no interest in the lease upon the filing of the current bankruptcy.

In her reply to the Court's Order of January 21, 2005, Turner raises yet another new argument. Not only does she argue that a judicial determination is a precondition for finding that her lease was not renewed, but that it also is required by the due process clause of the 14th Amendment. Each of the cases cited by Turner in support of her newest argument is factually inapposite.[16] And assuming a judicial determination for nonrenewal is required, "good cause" previously existed for termination of Turner's lease. The writ of possession was based on a judgment entered for failure to pay rent, the significance of which Turner cannot ignore. Turner had the opportunity to present her position and was provided process before the district justice, the arbitration panel, the state trial court in her nonjury trial and even a state appellate court. Turner has also asserted various claims in the District Court which have been addressed and resolved against her.

Similarly, the remaining cases cited by Turner regarding the necessity of a judicial determination are distinguishable. None of the cases are Pennsylvania cases or based on the requirements of Pennsylvania law. The cases are based on the requirements of subsidized housing other than under LIHTC. The cases find that a due process hearing is required which was done here. Further, where the landlord was a public housing agency, "good cause" was required to be shown prior to eviction.[17] These cases, which require a showing of "good cause" by judicial determination, are not in dispute. However, for the reasons already given, those propositions are not pertinent to this case under the present set of facts.

---

16. In the two cases cited specifically dealing with Low Income Housing Tax Credit programs, the tenants had been dispossessed of the premises without good cause. In *Bowling Green Manor Ltd. P'ship v. Kirk,* 1995 WL 386476 (Ohio App.1995), the tenant was given an insufficient notice to vacate premises based on the expiration of the lease with no other cause. It was found that the three day notice was not sufficient and good cause was not specifically determined by the municipal court. The tenant in *Fennelly v. Kimball Court Apartments, Ltd. P'ship,* 2001 WL 1524452 (Mass.Super.2001), was dispossessed after a fire and not permitted to return to the premises. It was found that a conflict existed between provisions in the Lease and its Addendum and that fire did not result in the lease being terminated under Section 8 housing and the lease.

17. The Pennsylvania case cited by Turner, *C & C TV & Appliance, Inc.,* 97 B.R. 782 (Bankr.E.D.Pa.1989), aff'd 103 B.R. 590 (E.D.Pa.1989) is particularly distinguishable. It deals with a private commercial landlord's termination of a Chapter 11 debtor's lease on the basis of a forfeiture clause utilizing extrajudicial means. The facts of this case are not comparable. Turner attempts to analogize her case to *C & C TV* and argue that her lease cannot be deemed to have expired since Crawford did not institute an action on this basis. If Crawford had done so, Turner would have asserted defenses. The Court does not read the law to require a separate, independent judicial proceeding for expiration of a lease particularly where prior judicial proceedings have been held pursuant to the lease and "good cause" for eviction in the form of unpaid rent has already been found.

In this case, "expiration" of the lease is only relevant for purposes of assumption and cure of the lease under *11 U.S.C. § 365*. Crawford's right to possession and the process it exercised to gain possession has long been, and finally, decided by the state court. But even if a sufficient property interest existed at the commencement of the case for the Court to consider, grounds still exist for granting relief from stay.

### Assumption of Lease Pursuant to 365(b)(1)

■ If Turner was able to disregard the conclusions that either the lease naturally ended or that the lease terminated due to her failure to pay rent, her arguments still fail. She cannot avoid the preclusive effect of the state court finding that, as of the filing date, Turner owed Crawford over $21,000. Even if this lease had not expired and was assumable, Turner has no ability to promptly cure. Absent an ability to cure, Turner cannot comply with the requirements of *11 U.S.C. § 365*.

*Section 365(b)* provides for the assumption of an *unexpired* lease. *11 U.S.C. § 365(b)(1)*. Having determined that the lease was expired at the time of filing, and that no further, specific judicial determination was required, the inquiry could end here. However, it is important to note that based on the present record, even if the lease was "unexpired", by her own admission Turner would not be able to comply with the remaining requirements to cure the arrearage or provide adequate assurance of prompt cure.[18]

Turner does not have adequate income to make the $595 monthly rental payments to Crawford. She contends that with the application of a "Section 8" voucher, she would be able to assume the lease. The Parties do not dispute that application of a "Section 8" voucher is not retrospective, and therefore, unavailable for purposes of curing the arrearage that now exists. In addition, Crawford cannot be required to accept such a voucher where the tenant is in arrears. That issue has been finally litigated in the state court proceedings. Crawford has been resolute in its refusal to accept a "Section 8" voucher for Turner. Crawford has steadfastly maintained that utilization of the voucher would necessitate a new lease agreement which it will not enter with Turner.

The only form of cure and adequate assurance offered by Turner and required by *11 U.S.C. § 365(b)(1)* was the "pending" District Court litigation. As is borne out in this case, litigation is highly speculative. It is uncertain when and at what pace the litigation will proceed and what the outcome will be. *In re Ziegler*, 88 B.R. 67, 70

---

**18.** On January 18, 2005, at the continued preliminary hearing on the relief from stay Motion, the Court questioned counsel for Turner, Eileen Yacknin, Esq. regarding the proper outcome for this case in the event Turner was also unsuccessful in the then-pending District Court litigation as she had been in the previously resolved state court litigation, at which time Atty. Yacknin conceded that, absent success of the District Court litigation, Turner does not, in fact, have an ability to promptly cure, even assuming a lease existed:

> Court: What if you're wrong? What if you lose in state court and you lose in federal court? ...
>
> Yacknin: Then she leaves.
>> *Audio tape Record at 3:40:42–45 (January 18, 2005)*

Later, upon further questioning by the Court during the same January 18, 2005 hearing, regarding compensating Crawford for the continued use of their premises, Yacknin responded:

> Yacknin: Obviously, Your Honor, if the Debtor does not prevail, she's out.
>> *Audio tape Record at 3:50:20 (January 18, 2005).*

(Bankr.E.D.Pa.1988).[19] Indeed, during the pendency of this matter, the District Court has ruled against Turner in her claim.[20] While Turner may choose to appeal those decisions, the same adequate protection concerns are applicable to the appeals. Additionally, should Turner be unsuccessful on appeal, additional debt to Crawford will have been incurred which Crawford may never be able to recover. Even if Turner is successful on appeal, additional rent is accruing during the period of time that the litigation is pending.

## CONCLUSION

Prior to the filing of this bankruptcy, the lease between Turner and Crawford naturally ended according to its express terms. Additionally, a final order of possession was previously issued by the state court as a result of Turner's breach of her lease for her failure to pay rent. Accordingly, at the time of filing this action, although Turner remained in possession, she held no recognizable legal interest in the lease. Pursuant to Pennsylvania law, although Turner may have retained an equitable interest in the property as a tenant at sufferance or "squatter" in an expired lease, this mere possessory interest is not equivalent to an interest in an unexpired lease. Since the lease expired, Turner holds no interest capable of assumption pursuant to 11 U.S.C. § 365(b). A separate judicial determination including a specific finding of "expiration" or "termination" is not now required under these circumstances. Even if it were, the final state court judgment has determined that the lease is "terminated", that Crawford was not required to accept Turner's Section 8 voucher, and, Crawford is entitled to possession for Turner's failure to pay rent. Therefore the return of possession to Crawford is appropriate.

Even if the lease was capable of being assumed, because of arrears in excess of $21,000 at the time of filing the bankruptcy, by her own admission, Turner cannot provide a cure or adequate assurance of a prompt cure as required by 11 U.S.C. § 365(b)(1). In light of the recent, unfavorable decisions for Turner by the Court of Common Pleas of Allegheny County, PA and the U.S. District Court for the Western District of PA, again by her own admission, Turner does not have the financial ability to provide such assurance. Nor does Turner possess the ability to pay the monthly rental amount going forward absent some form of subsidization. Turner's offer to remain in the premises with rent being subsidized through a Section 8 voucher is an unacceptable solution to Crawford and cannot be "foisted" upon Crawford by this Court.

For the above reasons, pursuant to 11 U.S.C. § 362(d)(1), "cause" exists to grant relief from stay to Crawford. An appropriate order will be issued.[21]

---

19. Upon consideration of debtor's offer of a lawsuit as adequate protection it was noted by the court that legislative history and case law development suggest that adequate protection requires more than reliance on a contingent, unliquidated lawsuit. *Id.*

20. The binding effect of the state court judgment was the basis for the District Court decision, i.e., the District Court was not prepared to second guess the state court and act as an appellate court with respect to the very same findings which control our result today.

21. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. This Court's jurisdiction is not at issue.